338 So.2d 399 (1976)
John Junior LEE
v.
STATE of Mississippi.
No. 49349.
Supreme Court of Mississippi.
October 12, 1976.
Rehearing Denied November 9, 1976.
*400 Morris C. Phillips, Jr., A.R. Wright, Jr., Carthage, for appellant.
A.F. Summer, Atty. Gen. by Pete Cajoleas, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
WALKER, Justice.
John Junior Lee was tried and convicted in the Circuit Court of Leake County for the murder of Claude E. Smith. Lee was sentenced to life imprisonment in the state penitentiary. In his appeal, his only noteworthy assignments of error concern the admission of his own confession and the exclusion of the confession of his brother, Charles D. Lee.
Claude Smith and his wife, who operated a small Leake County grocery store owned by their son-in-law, were murdered on the night of August 27, 1975. For reasons not apparent in the record, the police first questioned Charles D. Lee, appellant's brother, about the crime. Unsatisfied with his response, they decided to question John Lee on September 6, 1975. At that time, John Lee was given the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When investigation revealed inconsistencies in John's story, the officers returned to his home in Kosciusko on Monday, September 8, 1975, and requested him to accompany them to the Attala County sheriff's office for further questioning. At the jail, John again received the Miranda warnings and then admitted to having been present at the shooting but claimed not to have shot Smith himself. John claimed that he, his brother Charles, and one Lewis Riley, who was later identified by the Lees as Bernard Monroe, had driven to the Smith residence in Monroe's station wagon. John claimed that Monroe shot Mr. Smith and that his brother, Charles, shot Mrs. Smith. John was placed under arrest and reminded once again of his Miranda rights, whereupon he signed a waiver of these rights. He then accompanied the officers to the Smith residence where he described the crime in some detail.
On September 11, 1975, the officers took a written confession from John Lee. Since John can neither read nor write, and has only a third grade education, the confession was transcribed by one of the officers, who read it to John before John signed his name. The written confession differs in several minor respects from the oral confession but substantiates the basic account of the crime. After an evening of drinking, John, Charles, and two other men drove out to the Smiths' store to rob them. Charles and one of the other men shot Mr. and Mrs. Smith. John claimed not to have done the *401 shooting himself. Both confessions indicate that approximately ninety dollars in cash was stolen from the Smiths and that robbery was the motive for the shooting.

I.
John Lee took the stand and admitted having made all these statements to the police. He also admitted having been informed of his Miranda rights, but claimed that he was incapable of understanding them. He maintained that he had nothing to do with the crime, and had only confirmed his knowledge of its details as suggested by the police because he was scared of them. However, on cross-examination, he admitted his understanding of each of the warnings, except the meaning of "silence", as the prosecutor repeated them. He gave no reason for being afraid of the officers.
Before any confession may be admitted, the state must show that the defendant made a voluntary and intelligent waiver of his right to counsel and his right not to incriminate himself. The trial judge must determine the voluntariness of the confession from "the totality of the circumstances." See, e.g., Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 1140, 22 L.Ed.2d 433, 437 (1969). Where the defendant claims to have lacked the mental capacity to understand the warnings, the determination of the trial judge, who has seen the defendant on the stand, must necessarily be given great weight. A trial judge's finding that the defendant was mentally capable of understanding his rights has been upheld in the past. Harrison v. State, 285 So.2d 889 (Miss. 1973); Stewart v. State, 273 So.2d 167 (Miss. 1973). Here, Lee took the stand in his own behalf, and under cross-examination, seemed to understand his rights and appeared reasonably intelligent, though uneducated. A similar situation was presented in Stewart, supra, where the Court said:
The principal argument addressed to the contention that the statement was inadmissible, is based upon the proposition that she was incapable of intelligently waiving her rights because she had only a second grade education. There was no evidence, however, that she was lacking in intelligence or mentally retarded. She testified as a witness in her own defense as well as on the hearing with respect to the statement. Her testimony, as reflected by the record, does not indicate a lack or impairment of understanding. And while she said that she could not read and had not understood what she was signing, there was testimony that the statement had been read to her before she had signed it. (Stewart, supra at 168).
The appellant's testimony does not reveal any lack or impairment of understanding; therefore, his contention that he was incapable of understanding his Miranda rights when read to him is without merit.

II.
There is no substance to the claim that all Lee's admissions are inadmissible by reason of an invalid arrest or detention. Lee admits that he voluntarily accompanied the officers to the jail on September 8 for questioning.
Further, Lee himself admitted that he was not yet under arrest when he got to the jail.
Q... . `I'm talking about the Attala County jail?
A. I was not under arrest.
Q. You were not under arrest?
A. Not at that time.
Since Lee was not under arrest either illegally or legally, but was voluntarily cooperating with the officers, and since he understood his rights as given to him in the Miranda warnings, there can be no basis for excluding his confession.

III.
Lee also contends that his brother's confession should have been admitted in his defense. The record also contains the written confession of Charles D. Lee, dated September 3, 1975. The confession states that Charles went to the Smith residence with Elroy Nash and Jimmy Charles and that John Lee did not accompany them. *402 The judge excluded this written confession as hearsay, but noted that the defendant was free to call his brother, who was available, to the stand.
This State does not recognize the declaration against penal interest exception to the hearsay rule. Chambers v. State, 252 So.2d 217 (Miss. 1971), rev'd, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). This remains the position of the majority of American courts despite a trend toward more liberal admission. 29 Am.Jur.2d Evidence § 620 (1967); 22A C.J.S. Criminal Law § 749 (1961). Furthermore, many of those jurisdictions which would admit such evidence only allow it where the declarant is unavailable to testify. See, e.g., People v. Bodah, 28 A.D.2d 744, 280 N.Y.S.2d 709 (1967). Justice Rodgers, in his dissent in Chambers, stated the generally accepted formulation of the rule:
There can be little question but that the modern trend is to admit the admissions as an exception to the hearsay rule in penal cases as well as in pecuniary or proprietary cases where, (1) material, (2) where the declarant is dead, (3) beyond the jurisdiction of the court, or where he is in court and refuses to testify on the ground of self-incrimination. (Chambers, supra at 221).
This case provides no occasion to reconsider our position on the penal interest exception, since Charles Lee was not unavailable. He was in the courthouse and could have been called to the stand. Had he then refused to testify, we would be faced with the question of whether his prior confession would be admissible. We need not answer that question here.
Lee contends that the decision of the Supreme Court of the United States in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), requires reversal of his conviction. We disagree. Chambers does not seek to impose a general rule on the states that all declarations against penal interest which tend to exonerate a defendant must be admitted. Id. at 300, 93 S.Ct. 1048, 35 L.Ed.2d at 311. Chambers involved a highly unusual set of facts in which two valid rules, the Mississippi Voucher Rule and Hearsay Rule, combined to limit a defendant's Sixth Amendment right to confront the witnesses against him. Id. at 302-03, 93 S.Ct. at 1049, 35 L.Ed.2d at 312-13.
Chambers had called to the stand in his defense one Gable McDonald, who had previously confessed to the murder of which Chambers stood accused. McDonald denied his guilt on the stand, after the written confession had been introduced. Chambers was not allowed to impeach his own witness, nor to introduce the oral testimony of other witnesses to whom McDonald had made oral confessions. Since McDonald's testimony seriously eroded Chambers' defense, the Supreme Court concluded that McDonald must be regarded as an adverse, witness and held that Chambers should have been allowed to discredit his testimony. Moreover, the Court was heavily influenced by the evident trustworthiness of McDonald's confessions. Id. at 300-01, 93 S.Ct. at 1048-49, 35 L.Ed.2d at 311-12. The Court suggested that less trustworthy confessions might have been excluded, and specifically cited Brown v. State, 99 Miss. 719, 55 So. 961 (1911), in which, as here, the confession of a brother, who might reasonably have been thought to have been protecting the defendant, was excluded. 410 U.S. at 300 n. 20, 93 S.Ct. at 1048 n. 20, 35 L.Ed.2d at 312 n. 20.
The key consideration is that the Sixth Amendment right to confrontation, which was the basis of the Chambers' decision, has not been threatened here. Charles D. Lee was available but was not called as a witness. The court therefore committed no error in excluding his confession.
Having considered all of John Lee's assignments of error, and finding them to be without merit, his conviction must be affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.
LEE, J., took no part.