481 So.2d 280 (1985)
In the Interest of W.R.A., a Minor.
No. 55853.
Supreme Court of Mississippi.
November 27, 1985.
*281 Howard Q. Davis, Jr., Clark, Davis & Belk, Indianola, for appellant.
Ben L. Saucier, Sunflower Co. Pros. Atty., Indianola, for appellee.
Before PATTERSON, C.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal arises from Youth Court proceedings the course of which has been unusual, as will presently appear. Most important of the questions presented are those respecting the taking of a confession for a youthful offender. We find on the facts presented Miranda[1] warnings followed by the youth's knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel, coupled with the youth's mother's knowing consent to the interrogation, sufficient to render a confession admissible even where it is arguably the fruit of a previous, tainted inculpatory statement.
In the end we affirm the Youth Court's adjudication of delinquency. Because some five weeks thereafter it appears that the Youth Court transferred jurisdiction of these matters to the Circuit Court, we hold that prosecutions there for the felony charges which formed the bases for the adjudication of delinquency may not be had consistent with the youth's rights under the double jeopardy clauses of federal and state constitutions. We remand for disposition under the Youth Court Act.

II.
W.R.A. was born on October 17, 1966. In terms of IQ and educational achievement, he is of obvious low intelligence. He has spent the better part of his teenage years before the Chancery Court of Sunflower County, Youth Court Division (hereinafter "The Youth Court"). He appeals here an adjudication of delinquency arising out of incidents occurring on February 24, 1984, at a time when W.R.A. was seventeen years of age.
On February 7, 1984, W.R.A. was detained by the Police Department of Indianola, Mississippi, for investigation of the burglary of the Indianola Junior High School and the Seymour Library. On February 8, 1984, W.R.A. was released to the custody of his mother. These charges are not directly involved in the pending appeal.
On or about February 17, 1984, a petition was filed in the Youth Court seeking to have W.R.A. adjudicated delinquent on the February 7 charges. An adjudicatory hearing was set for February 29, 1984. Gary L. Austin, Esq., of the Indianola Bar, was appointed to represent W.R.A. The hearing on these charges was later rescheduled for March 14, 1984.
W.R.A.'s rearrest on February 24, 1984, has led to five additional charges resulting ultimately in this appeal. He was arrested *282 in Inverness, Mississippi, was questioned by the Inverness Police Department and made an inculpatory statement at about 9:35 A.M. on February 24, 1984. The Inverness Police Department called the Indianola Police Department some eight miles north suggesting that W.R.A. might have been involved in the theft of an automobile in Indianola. As a result of that call, Captain E.L. Steed was dispatched from Indianola to bring the youth back for further questioning. On that same day Indianola police officials took highly incriminating statements from W.R.A. the times of which have been recorded as 2:34 P.M. and 2:45 P.M. respectively.
Although appointed on February 17, 1984, to represent W.R.A. on the February 7 charges and continually representing him on those charges through the hearing on the second Wednesday of March, Gary L. Austin was not called on February 24 and informed that W.R.A. had been apprehended; nor was he present; nor did he give his consent to anyone to take W.R.A.'s statement.
To summarize, W.R.A. was charged with seven offenses during the month of February, 1984. A chronology of these is helpful to an understanding of the issues tendered on the instant appeal:

 DATE CHARGE W.R.A.'s ATTORNEY DISPOSITION
 2/7/84 Burglary of Jr. High Gary L. Austin Unknown
 School Appt. 2/17/84
 2/7/84 Burglary of Henry M. Gary L. Austin
 Seymour Library, Appt. 2/17/84 Unknown
 Indianola
 2/21/84 Burglary of Gary Howard Q. Davis, Jr. Dismissed
 McNally's Home
 2/24/84 Burglary of home of Howard Q. Davis, Jr. Dismissed
 James McFeltan,
 Inverness, Miss.
 2/24/84 Grand Larceny of Howard Q. Davis, Jr. Adjudicated
 automobile of Dickie Delinquent
 Carr
 2/24/84 Grand larceny of Howard Q. Davis, Jr. Adjudicated
 automobile of Dennis Delinquent
 Buzza
 2/24/84 Burglary of automobile Howard Q. Davis, Jr. Adjudicated
 of Herbert E. Calhoun Delinquent

The last three of these charges constitute the instant appeal.
With respect to the three charges here at issue, the Youth Court on April 17, 1984 entered its order adjudging W.R.A. to be delinquent under the Mississippi Youth Court Act. The two charges regarding the burglaries of the McNally and McFeltan homes were dismissed, we are told, because the required consent to interrogate was not obtained and, accordingly, the confessions upon which those charges were based were obtained in violation of Miss. Code Ann. § 43-21-311(4) (1972). Those charges are not involved in this appeal. Our purpose here in describing the February 7 charges is to explain that on February 24, 1984, the date of the confessions undergirding the three adjudications here appealed, W.R.A. had counsel actively representing him before the Youth Court, albeit formally only with respect to the February 7, 1984 charges.

III.
At the outset, the Youth Court prosecutor moves for entry of an order dismissing this appeal asserting as grounds that there *283 is no final order entered in the Youth Court from which an appeal may be taken. Our attention is directed to the Amended Order Transferring Jurisdiction To Circuit Court entered May 23, 1984. Temporally, this is the final order entered in the course of the proceedings below.
Without doubt, no appeal of right lies to this Court from an order of a Youth Court transferring to circuit court jurisdiction over the alleged criminal conduct of a youthful offender. In the Interest of Watkins, 324 So.2d 232, 234 (Miss. 1975). If all that had been accomplished in the proceedings below was a transfer of jurisdiction to the Circuit Court, we would have no alternative but to dismiss the appeal.
The present record contains an order entered April 17, 1984 by the Youth Court adjudging W.R.A. to be delinquent with respect to the matters charged in three separate Youth Court petitions  two grand larcenies [Miss. Code Ann. § 97-17-41 (1972)] and one burglary [Miss. Code Ann. § 97-17-33 (1972)]. That order was entered the same day as a hearing was held in the Youth Court wherein the Youth Court prosecutor called witnesses and offered substantial evidence to prove W.R. A's delinquency on each charge. We find nothing in the record which would reflect the order adjudicating delinquency of April 17 has been altered, amended, rescinded or modified. It is a final order from which an appeal such as this may lie. The motion to dismiss is denied.

IV.
W.R.A. first argues that the proceedings against him must be finally dismissed in that he was held too long before an adjudicatory hearing was held. The record reflects that W.R.A. was incarcerated on February 24, 1984 and that he remained in custody continuously until the time of his adjudicatory hearing on April 17, 1984.[2] This fifty-two day incarceration contravenes Miss. Code Ann. § 43-21-551 (1972), or so we are told. W.R.A. moved the Youth Court for dismissal on this ground. His motion was denied. The point is brought here.
Section 43-21-551 provides:
Scheduling of Adjudicatory Hearings.
(1) Unless the hearing is continued upon a showing of good cause or the person who is the subject of the cause has admitted the allegations of the petition, an adjudicatory hearing shall be held within ninety (90) days after the filing of the petition to determine whether there is legally sufficient evidence to find that the child is a delinquent child, a child in need of supervision, a neglected child or an abused child. If the adjudicatory hearing is not held within the ninety (90) days, the petition shall be dismissed with prejudice.

(2) If the child is in detention, the hearing shall be held as soon as possible but not later than twenty-one (21) days after the child is first detained by the Youth Court unless the hearing be postponed: (a) upon motion of the child; (b) where process cannot be completed; or (c) upon a judicial finding that a material witness is not presently available. If the adjudicatory hearing is not held or postponed for the aforesaid reasons, the child may be released from detention. (emphasis supplied).
W.R.A. misreads the statute. Subsection (1) contains the "speedy trial" rule. It provides a limitations period within which an adjudicatory hearing must be held. The time limitation there provided is ninety days. Subsection (2) refers to a limitation on pre-adjudicatory hearing detention. If an adjudicatory hearing is not held within twenty-one days, the child may be released from detention, but this does not mean that the petition must be dismissed. Nothing in Subsection (2) bars a proceeding against a youthful offender under Subsection (1) so long as the ninety-day limitation period as *284 there provided is not exceeded. Subsection (2) has only to do with the question of pre-adjudicatory hearing detention.
In the case at bar, a period of fifty-two days lapsed between W.R.A.'s incarceration on February 24, 1984 and the date of his adjudicatory hearing on April 17, 1984. This is well within the statutory ninety-day "speedy trial" time limit. The motion to dismiss was correctly overruled. This assignment of error is denied.

V.
W.R.A. next challenges the admissibility of the inculpatory statements he made regarding the three burglaries. He asserts two grounds: (a) that the statements were obtained in violation of rights secured to him under the Youth Court Act and under the United States and Mississippi Constitutions, and (b) that, in any event, the statements were the fruit of the poisonous tree, and thus inadmissible, the poisonous tree being a prior statement obtained in violation of W.R.A.'s rights under the Youth Court Act and federal and state constitutions.
It will be recalled that W.R.A. was apprehended on February 24, 1984, in Inverness, Mississippi. He was questioned by Inverness authorities regarding the burglary of the residences of James McFeltan and of Gary McNally. No parent, guardian ad litem, attorney or authorized personnel of the Youth Court was contacted prior to this questioning. See Miss. Code Ann. § 43-21-311(4) (1972). A statement was obtained from W.R.A. suggesting that he may have had an involvement in another crime committed in nearby Indianola.
As explained above, W.R.A. at this time had pending against him in the Youth Court two other burglary charges said to have arisen out of the February 7 incidents. W.R.A. had counsel representing him on these two charges, Gary L. Austin, Esq., who was serving via court appointment.
Interrogation of W.R.A. in Indianola was conducted under the direction of Officer Ted Mabry of the Indianola Police Department. The record reflects that Officer Mabry contacted Honorable Jack E. Harper, Jr., Youth Court Referee, and obtained permission to question W.R.A. as required by Miss. Code Ann. § 43-21-311(4) (1972) In addition, W.R.A.'s mother, Mrs. Dilcie Mae Anderson, was contacted. Mrs. Anderson came to the police station, was advised of the charges against her son, and gave her permission that W.R.A. be questioned regarding those charges. Beyond this, W.R.A. was given the standard Miranda warnings and, notwithstanding, agreed to talk. The written statement given by W.R.A. in the early afternoon of February 24, 1984 contains an express acknowledgement that he understood his Miranda rights, that he waived them, and specifically, that he did not wish to talk with a lawyer.
We begin with the attack on the confession made under the Youth Court Act. There we find in Miss. Code Ann. § 43-21-311(4), that
(4) Except for the child's counsel, guardian ad litem and authorized personnel of the youth court, no person shall interview or interrogate a child held in a detention or shelter facility unless approval therefor has first been obtained from the judge or his designee. When a child in a detention or shelter facility is represented by counsel or has a guardian ad litem, no person may interview or interrogate the child concerning the violation of a state of federal law, or municipal or county ordinance by the child unless in the presence of his counsel or guardian ad litem or with their consent.
The first requirement of this statute was met when Officer Mabry contacted Youth Court Referee Harper and obtained permission to question W.R.A. There was no guardian ad litem in the picture. The question presented is whether Gary L. Austin, W.R.A.'s attorney on the February 7 charges, was "counsel" within the meaning of the statute, for the record is without dispute that Mr. Austin was never contacted.
*285 To be sure the interrogation took place outside Austin's presence and without his consent. Four officers involved with the interrogation of W.R.A. in Indianola each testified unequivocally that he had no knowledge that Austin was representing W.R.A. on the February 7 charges or otherwise. Apparently W.R.A. did not volunteer this information, even in the face of warnings that he had a right to counsel and could obtain access to counsel before questioning.
W.R.A. argues that it is improperly technical to read this statute as requiring interrogation in the presence of counsel only where the youth has a lawyer representing him on the immediate charge under investigation. Conceding a common sense validity to the point, the fact remains that neither W.R.A. nor his mother told Officer Mabry or the others that Mr. Austin was representing W.R.A. on the February 7 charges. Austin testified that the Indianola Chief of Police was aware of his representation. The Chief of Police, however, had no involvement in the February 24 interrogation. There is no evidence that Officer Mabry or any of the others knew from the Chief of Police of Austin's representation of W.R.A. It must be kept in mind that the charges under investigation on February 24 were wholly unrelated to the incidents said to have occurred on February 7. Without deciding whether law enforcement officials would under section 43-21-311(4) have the obligation to notify and obtain consent from one such as Mr. Austin had they known of his representation, we hold on these facts that there has been no violation of the statute.
There is no question but that the statement given in Inverness previously was unlawfully obtained. Leaving aside any question of violation of constitutional rights, there is no evidence that the Youth Court Referee or anybody else gave Inverness officials authority to question W.R.A. Miss. Code Ann. § 43-21-311(4) (1972). The Youth Court held inadmissible the Inverness confession and, it appears, correctly so. In consequence the Youth Court dismissed two of the charges in the petition regarding W.R.A.
It seems clear that there was a "but for" causal relationship between the unlawful questioning of W.R.A. in Inverness and the later-that-same-day successful interrogation eight miles to the north in Indianola. Likewise clear is that there are intervening circumstances which suggest, nevertheless, that the Indianola confession was knowingly and voluntarily given and, thus, competent evidence against W.R.A. Under these circumstances our inquiry is whether, under the totality of the circumstances, the intervening circumstances have sufficiently purged the taint of the original unlawful confession to the extent that we may say with confidence that the subsequent confession is the product of a voluntary, free and informed will.[3]Oregon v. Elstad, 470 U.S. ___, ___, 105 S.Ct. 1285, 1298, 84 L.Ed.2d 222, 238 (1985); Yates v. State, 467 So.2d 884, 885-887 (Miss. 1984); cf. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Hall v. State, 427 So.2d 957 (Miss. 1983).
Without dispute W.R.A. enjoys a privilege against self-incrimination and a right to counsel the same as an adult. In Re Gault, 387 U.S. 1, 34-58, 87 S.Ct. 1428, 1447-1459, 18 L.Ed.2d 527, 550-561 (1967). Notwithstanding that W.R.A. is a minor and that a fruits issue is arguably present, we perceive that the issues tendered must be analyzed the same as any other confession issue. First, the question is whether the Miranda warnings were given. Assuming an affirmative answer, the Court then confronts the question whether, under *286 the totality of the circumstances, the accused has knowingly and intelligently waived his rights and freely and voluntarily confessed. Gavin v. State, 473 So.2d 952, 954 (Miss. 1985); Jones v. State, 461 So.2d 686, 696-97 (Miss. 1984); Depreo v. State, 407 So.2d 102, 106 (Miss. 1981); Lee v. State, 338 So.2d 399, 401 (Miss. 1976).
In this context, one factor always suggesting inadmissibility, to one extent or another, is the age of the accused. Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, 212-13 (1979); McLemore v. Cubley, 569 F.2d 940, 940-41 (5th Cir.1978). W.R.A. on the day of the confession was seventeen years, four months old. The record reflects that he had had considerable prior experience with the Youth Court. On several prior occasions he had been represented by counsel on delinquency charges against him. For the law to pronounce that such a person has no capacity to understand and waive his privilege against self-incrimination would amount to a declaration incongruent with reality. The youth factor, accordingly, is seldom per se conclusive that a confession was not freely and voluntarily given.
Another factor to be considered, his age aside, is the youth's mental capacity. See Jones v. State, 461 So.2d 686, 696 (Miss. 1984) and Dover v. State, 227 So.2d 296 (Miss. 1969). W.R.A. was and is a person of low intellectual abilities. The record contains a psychiatrist's opinion (not before the Court in connection with the suppression hearing but apparently obtained in contemplation of the dispositional hearing) that "I do not think he is retarded" but that he does appear to have "borderline intellectual functioning". Notwithstanding, there is nothing in the present record suggesting that W.R.A.'s intellectual abilities were so inadequate that we should conclude as a matter of law he was incapable of waiving his privilege against self-incrimination and his right to counsel. This is particularly so in light of W.R.A.'s past experience.
Here there is an additional factor suggesting voluntariness. W.R.A.'s mother was called to the Indianola Police Station. She was advised of the charges against W.R.A. and was given the opportunity to talk with him prior to police interrogation. To be sure, her consent to the interrogation could not waive W.R.A.'s privilege against self-incrimination  that right was and is personal to the accused and may be waived only by him, even when he is a youth. Still, the presence of W.R.A.'s mother prior to questioning augmented his opportunity to make a knowledgeable and voluntary decision whether he would submit to interrogation.
The prosecution bears the burden of persuasion that the factors suggesting admissibility outweigh those suggesting inadmissibility. See Jones v. State, 461 So.2d 686, 696-697 (Miss. 1984); see Penick v. State, 440 So.2d 547, 554 (Miss. 1983); Hall v. State, 427 So.2d 957, 960 (Miss. 1983). In the end, however, even where the accused is a minor, the question of admissibility turns on whether the prosecution can convince the Youth Court beyond a reasonable doubt that under the totality of the circumstances the confession was the product of free and voluntary choice. Gavin v. State, 473 So.2d 952, 954 (Miss. 1985); Bell v. State, 274 So.2d 371, 374 (Miss. 1973); Dover v. State, 227 So.2d 296, 300 (Miss. 1969).
On the present record we affirm the determination of the Youth Court that, under the totality of the circumstances, the Indianola confession was freely and voluntarily given. We base this holding upon the undisputed evidence that W.R.A. was warned of his rights under Miranda; that he verbally waived those rights and agreed to talk; that W.R.A.'s mother was called to the police station before any interrogation began, was advised of the nature of the charges against him, was in his presence given the opportunity to consult with W.R.A. prior to questioning, and thereafter gave her permission that he be interrogated. W.R.A. then signed an acknowledgement of his rights and waiver. We have held admissible a youth's voluntary statement *287 made to a sheriff in the course of questioning to which the youth's parents consented. In Interest of Wilder, 347 So.2d 520, 521 (Miss. 1977). The Youth Court correctly held that under the totality of the circumstances the prosecution had carried its burden of establishing that the Indianola confession was freely and voluntarily given and therefore admissible.

VI.
On April 17, 1984 following a full hearing, the Youth Court entered an order adjudging W.R.A. delinquent on three charges, the burglary of the automobile of Herbert E. Calhoun, grand larceny of an automobile belonging to Dennis Buzza; and grand larceny of an automobile belonging to Dickie Carr, Jr. Inexplicably, there subsequently appears in the record under date of May 23, 1984 an order entitled Amended Order Transferring Jurisdiction to the Circuit Court. This order on its face transfers the three charges mentioned above to the Circuit Court of Sunflower County. The practical effect of the transfer order is to provide that W.R.A. may be prosecuted in the Circuit Court as an adult on each of these three felony charges.
This rather unusual transfer order might be thought at first blush to suggest that an error[4] was made respecting the order adjudicating W.R.A. a delinquent. We have searched the record, however, and have found no order in any way amending withdrawing or rescinding the order adjudging W.R.A. to be delinquent. In fact the record reflects that, prior to the April 17, 1984 hearing, W.R.A.'s attorney was summon to appear "for an adjudicatory hearing". The court reporter's transcript of the April 17 hearing begins "An Adjudicatory Hearing was had in the above styled matter in Indianola, Sunflower County, Mississippi, on April 17, 1984."
Most persuasive of all that the April 17 hearing was indeed an adjudicatory hearing is the fact that the Youth Court prosecutor proved the case against W.R.A. on all three charges. The three victims were called to testify respecting the losses or damages to their property. Indianola Police Officers were called to establish W.R.A.'s involvement in the three crimes and, specifically, to lay the predicate for admission of W.R.A.'s confession. In short the prosecutor proved convincingly what in candor was an open and shut case. The order of April 17, 1984 somewhat perfunctorily provides
ORDER ADJUDICATING DELINQUENCY
This day this cause came on for hearing and all parties being before this Court; and the Court having heard all the evidence:
It is hereby Ordered that said minor, W.R.A. is found to be delinquent under the law on charges of burglary of Herbert E. Calhoun's car, grand larceny of auto belonging to Dickie Carr and grand larceny of auto belonging to Dennis Buzza.
Ordered this 17th day of April, 1984.
 /s/ Carver A. Randle
 YOUTH COURT REFEREE
Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) holds that once a juvenile has been adjudicated delinquent within the youth court system, any further prosecution as an adult in a state court violates the double-jeopardy clause of the Fifth and Fourteenth Amendments. The Court notes that both proceedings imposed heavy pressures and burdens  psychological, physical and financial on a person charged, both engender elements of anxiety and insecurity and impose heavy personal strain. Thus jeopardy attaches when the respondent is put to trial before the trier of facts, that is, when the youth court, as the trier of facts, begins to hear evidence. 421 U.S. at 531, 95 S.Ct. at 1786.
*288 Breed does not apply when the hearing accorded the youth in question was only a transfer hearing. Interest of Watkins, 324 So.2d 232, 233 (Miss. 1975). In Watkins the court noted that the record indicated that no adjudication by the Youth Court of Watkins' guilt or innocence of the alleged crimes had been sought or had. Proof was limited to testimony that the crimes had been committed and that Watkins had been arrested in connection with them.
As was the case in Watkins, at W.R.A.'s hearing proof was put on as to the nature of the crimes committed. What makes the hearing below different from Watkins is the admission of the statements/confessions taken from W.R.A. at the police station, and the order adjudging W.R.A. to be a delinquent that issued that same day.
This Court has noted:
If a child is to be transferred to another Youth Court, the transfer hearing must be prior to any adjudicatory hearing. Once an adjudicatory hearing has been held, any further adjudicatory action on the part of either a Youth Court or a Circuit Court will constitute double jeopardy. (citations omitted).
Walls v. State, 326 So.2d 322, 325 (Miss. 1976).
It is not necessary that a second trial be held before a double jeopardy threat is addressed. See Jones v. Thigpen, 741 F.2d 805, 814 (5th Cir.1984); DeBussi v. State, 453 So.2d 1030, 1032-34 (Miss. 1984); cf Harden v. State, 460 So.2d 1194, 1200-21 (Miss. 1984).
From the record it appears with little doubt that prosecuting authorities in Sunflower County intend to put W.R.A. to trial in Circuit Court as an adult. This they may not do consistent with W.R.A.'s rights under the Fifth and Fourteenth Amendments to the Constitution of the United States and Article 3, Section 22, Mississippi Constitution of 1890.
The Order adjudicating W.R.A. delinquent is affirmed. The case is remanded to the Youth Court for disposition within the Youth Court Act.
AFFIRMED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1629-30, 16 L.Ed.2d 694, 726 (1966).
[2] In their briefs the parties argue to no small extent over the matter of the identity of the charges W.R.A. was held on  there have been so many. In view of the disposition we make of this assignment, the quibblings need not detain us.
[3] We assume but do not decide that the analysis of fruits issues where a confession is attacked is the same whether the poisonous tree has constitutional or statutory roots. The point is of no consequence ultimately as we regard the totality of the circumstances test in fruits caes under Elstad and Yates as the same as the totality of the circumstances we employ in confession cases where no fruits issued is tendered. Gavin v. State, 473 So.2d 952, 954 (Miss. 1985); Jones v. States, 461 So.2d 686, 696-97 (Miss. 1984).
[4] One would ordinarily have expected a dispositional hearing to follow. Miss. Code Ann. §§ 43-21-601, et seq. (1972); In Interest of J.E.J., 419 So.2d 1032, 1034 (Miss. 1982). The present record reflects no such hearing.