534 So.2d 194 (1988)
Statie SMITH, Jr. a/k/a Statie Smith, III
v.
STATE of Mississippi.
No. 57534.
Supreme Court of Mississippi.
November 16, 1988.
*195 Leonard McClellan, Wanda Turner, Oxford, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
Statie Smith was convicted of rape in the Circuit Court of Marshall County and sentenced to twenty years' imprisonment. On appeal, Smith alleges that his confession was erroneously admitted into evidence and that he was entitled to a new trial because a relative of the victim sat on the jury. Finding no error, we affirm.

FACTS
On the night of May 7, 1985, a man broke into the victim's home, bound her arms with a discarded extension cord, and raped her twice over the ensuing three to four hours. The victim stated that she never saw the rapist's face, but described him as a young black man in his 20's, who was about five feet tall with soft skin. On the stand, the victim stated that her assailant's hands were rough and calloused.
Statie Smith, a sixteen-year-old black youth, was one of three suspects arrested during the investigation of this crime. Of the three suspects only Smith's fingerprints were found in the victim's home. Smith was arrested on May 12, 1985. While the law enforcement officials were making the arrest, Smith apparently became frightened or hostile and resisted the arrest, brandished a gun and assaulted one of the officers.
Two days later, on the morning of May 14, 1985, Smith was taken before J.M. Ash, the Marshall County Youth Court Referee for determination of whether he should be further detained on charges of burglary, resisting arrest and assault upon a law enforcement officer. At this detention hearing, Smith was represented by appointed counsel, Kizer Jones. Jones and Ash testified that the rape was not brought out in the Youth Court hearing. Apparently, Smith had not yet been charged with this crime.
The Youth Court Referee concluded that there was probable cause on the crimes charged to warrant further detention of the defendant. At this time, the referee also gave Kenneth Dickerson, a criminal investigator with the Mississippi Highway Patrol, permission to question Smith, while cautioning Dickerson to have one or both of Smith's parents present during any questioning.
On the afternoon of May 14, 1985, Smith called Dickerson to his cell, saying he wanted to make a statement. Dickerson contacted Smith's mother. No one notified Jones, who, it will be recalled, had been appointed to represent Smith earlier that day. Dickerson orally informed both Smith and his mother of Smith's Miranda rights. Smith's mother consented to her son giving a statement and both she and her son signed a waiver of his rights. Smith then confessed to the May 7 rape.
Trial was held in the Marshall County Circuit Court on February 3-6, 1986. The taped confession was admitted into evidence over defense objection.

I. DID THE TRIAL COURT ERR IN ADMITTING THE CONFESSION SECURED IN VIOLATION OF THE YOUTH COURT ACT?
Smith's first argument is that the Youth Court Act is applicable to the facts of this case and that his confession was secured in violation of the Act. We have held that when a juvenile is charged with an offense carrying a potential life sentence, such as rape or murder, jurisdiction is vested exclusively in the circuit court and the Youth Court Act is inapplicable. Johnson v. State, 512 So.2d 1246, 1250 (Miss. 1987); Winters v. State, 473 So.2d *196 452, 459 (Miss. 1985). This determination flows from the language of the Youth Court Act, Mississippi Code Annotated, Section 43-21-105(j) (Supp. 1986), defining a delinquent as:
(j). "Delinquent Act" is any act which if committed by an adult is designated as a crime under state or federal law, or municipal or county ordinance other than offenses punishable by life imprisonment or death. A delinquent act includes escape from lawful detention. (Emphasis added).
At the time Smith gave his confession he had not been charged with any crime that would remove him from the Youth Court's jurisdiction. The crimes with which he had been charged, burglary, resisting arrest and assaulting a police officer, all fall within the Youth Court's jurisdiction. Therefore, the circumstances surrounding Smith's confession must satisfy the Youth Court Act.
MCA § 43-21-311(4) (Supp. 1986), provides:
Except for the child's counsel, guardian ad litem and authorized personnel of the youth court, no person shall interview or interrogate the child held in a detention or shelter facility unless approval therefor has first been obtained from the judge or his designee. When a child in a detention or shelter facility is represented by counsel or has a guardian ad litem, no person may interview or interrogate the child concerning the violation of a state or federal law, or municipal or county ordinance by the child unless in the presence of his counsel or guardian ad litem or with their consent.
In In Interest of W.R.A., 481 So.2d 280 (Miss. 1985), on facts almost identical to those in the case at bar, we held that MCA § 43-21-311(4) had not been violated. In W.R.A., the youthful offender was represented by counsel on charges wholly unrelated to the charges under investigation. The officers interrogating W.R.A. did not know that he had an attorney representing him on the other charges. One of the officers obtained permission from the Youth Court Referee to question W.R.A. After this, W.R.A.'s mother was contacted and consented to his being questioned. W.R.A. was informed of his rights and waived them. Neither he nor his mother told the officers that he had an attorney.
One important question left unanswered in W.R.A. was "whether law enforcement officials would under section 43-21-311(4) have the obligation to notify and obtain consent from [the attorney] had they known of his representation?" In Interest of W.R.A., 481 So.2d at 285. In the case at bar, investigator Dickerson testified that he was aware that Smith was represented by Attorney Jones on charges brought before the Youth Court earlier in the day. He emphasized that neither Smith nor his mother informed him of this fact, nor asked that he be present. We hold, notwithstanding the interrogating officer's knowledge that the defendant had counsel, that the interrogation did not violate MCA § 43-21-311(4). However, we caution that where, as here, no guardian ad litem has been appointed, the better practice is to secure either the presence or the consent of the youth's counsel. Clearly, an attorney or guardian ad litem is in a better position to render meaningful advice and consent than a parent not learned in the law.

II. DID THE TRIAL COURT ERR IN ADMITTING THE DEFENDANT'S CONFESSION BECAUSE THE CONFESSION WAS NOT INTELLIGENTLY AND VOLUNTARILY MADE?
Smith also challenges the introduction of the confession into evidence on the ground that it was obtained in violation of his constitutional rights because he was incapable of making a voluntary and intelligent waiver of his rights. During the suppression hearing, Dr. Janet St. Lawrence was accepted as an expert in psychology and testified for the defense. Dr. St. Lawrence, who had performed many psychological tests on Smith, stated that Smith had a verbal I.Q. of 65, which placed him in the first percentile of the general population. In her opinion Smith was borderline or mildly mentally retarded. She stated that Smith could not read; would not recognize the word "waiver"; generally could not *197 understand multi-syllabic words; and, if a speaker used compound or complex sentences, Smith would not be able to understand the meaning of the sentence. St. Lawrence also testified that Smith had "the minimal skills necessary for daily functioning, but he is a functioning illiterate." When asked about his capacity for understanding his Miranda rights, "understanding and comprehension, his intellectual functioning and my professional opinion, he was incapable of understanding what it was that he was signing or what that meant."
To recapitulate, the state's evidence was that Smith initiated the conversation, stating that he wanted to talk to Dickerson and his mother about the rape. Dickerson then contacted Smith's mother, who came to the jail. Both Smith and his mother were advised of Smith's constitutional rights and voluntarily signed a waiver of those rights. Smith did not have any questions regarding his rights and did not, at any time, request an attorney or that the questioning be stopped. The trial judge listened to the taped confession, which began with a discussion of Smith's rights. At the conclusion of the hearing, the trial court ruled that Smith had made a knowing and deliberate waiver of his rights. The court was persuaded by a review of the questions and responses in the taped confession that Smith was capable of voluntarily confessing and found that the psychological evidence did not outweigh this conclusion.
Where Miranda warnings have been given and rights articulated therein respected, the test is whether there has been under the totality of the circumstances, a knowing and voluntary waiver by the accused of his privilege against self-incrimination. Kniep v. State, 525 So.2d 385, 389 (Miss. 1988), citing Jones v. State, 461 So.2d 686, 696 (Miss. 1984), vacated on other grounds, ___ U.S. ___, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988).
In his voluntariness determination, the trial judge must first determine whether the accused, prior to the confession understood (a) the content and substance of the Miranda warnings, and (b) the nature of the charges of which he was accused with respect to which he was under investigation.
* * * * * *
Not one of [our] cases announces a per se rule. They stand collectively for the proposition that the mental abilities of an accused are a factor  but only one factor  to be considered. When all of the facts and circumstances of the particular confession and interrogation leading up to it are considered  including the accused's abilities  the trial judge must find as a fact whether the confession was intelligently and voluntarily made. That fact-finding will not be disturbed here unless we find it clearly erroneous.
Merrill v. State, 482 So.2d 1147, 1149-50 (Miss. 1986), quoting Neal v. State, 451 So.2d 743, 755-56 (Miss. 1984).
On the facts in this case, we cannot say that the trial court's finding of fact was clearly erroneous.

III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL ON THE GROUND THAT THE JURY INCLUDED A SECOND COUSIN OF THE PROSECUTRIX?
Several days after the conclusion of the trial, it was discovered that one member of the jury panel was a second cousin of the prosecutrix. On voir dire the venire was asked, "Is anyone on the jury panel related by blood or marriage to [the victim]?" The second cousin did not respond. The question was repeated and again she did not respond. As soon as defense counsel became aware of the relationship, he amended his motion for a new trial to include it. A hearing on the motion for new trial was held in which the natural father of the cousin testified that he and the victim's father were first cousins and his daughter was therefore the victim's second cousin. When the juror testified at the hearing, the following exchange took place:
Q. Okay. Now, I believe that your testimony in response to questions from Mr. McClellan, you said that up until the time that your grandmother told you that you were related to [the victim], you had no idea of your relationship. Is that correct?

*198 A. That's right.
Q. All right. Now, when did you say that your grandmother told you about this?
A. It was two or three days after the trial was over.
Q. After the trial?
A. Uh-huh.
Q. Now, do you recall during that period of time when we were selecting the jury to try the case that there was a question asked, probably by me or by me and Mr. McClellan, and maybe by the Judge also, when the jury venire was asked if anybody was related to [the victim]. Do you remember that?
A. Yes.
Q. And, of course, you didn't respond, and you didn't respond because you didn't know you were related. Is that correct?
A. That's right.
Q. And had you known that you were related, would you have responded?
A. Yes, I would.
Q. Now, since you have testified that you didn't know about this relationship until some two days after the trial, then would we be safe in saying ... Let me just ask you: Did this relationship have any influence on the way you voted on the trial of this case? Did you even know about it?
A. The relationship ...
Q. Between you and [the victim].
A. No.
Q. Didn't have any?
A. No.
Q. Did it influence you in any way?
A. No
Q. And in fact, what you're telling us is, at the time you were deliberating, making your decision about the guilt of the defendant in this case, you didn't even know you were related to [the victim]. Is that correct?
A. That's right.
The juror's father also testified that he had never told his daughter about the relationship and he believed she did not know of it. After the hearing was concluded, the trial judge found that the relationship between the two was unkonwn to both the victim and her cousin and had no effect upon the jury's verdict.
Our leading case on this point is Odom v. State, 355 So.2d 1381 (Miss. 1978). In Odom this Court laid down the following rule:
... where, as here, a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered. It is, of course, a judicial question as to whether a jury is fair and impartial and the court's judgement will not be disturbed unless it appears clearly that it is wrong.
355 So.2d at 1383.
See also, Laney v. State, 421 So.2d 1216, 1217 (Miss. 1982).
There was ample evidence, in the instant case, to support the trial court's finding that the relationship had been unknown until after the trial and that a fair and impartial jury had been empaneled. The trial court's denial of the motion for new trial was not manifestly wrong.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.