LEE, C.J., for the Court:
¶ 1. After a jury trial in Lowndes County Circuit Court, Toney Jennings was convicted of one count of statutory rape and one count of resisting arrest on a law-enforcement officer. Jennings was sentenced to fifteen years, with five years suspended and ten years to serve, for statutory rape and six months for resisting arrest. Jennings now appeals the statutory-rape conviction, arguing: (1) his statement was not voluntary; (2) he was entitled to a judgment of acquittal notwithstanding the verdict (JNOV); (3) the statutory-rape verdict was contrary to the weight of the evidence; and (4) the youth *266 court had exclusive original jurisdiction over the case.
FACTS AND PROCEDURAL HISTORY
¶ 2. On June 9, 2010, J.S.,[1] a thirteen-year-old female, reported to law enforcement that Jennings, then sixteen years old, had coaxed her into his grandmother’s house, locked the front door, pulled her into a bedroom, and shut the door. Jennings then pushed her onto the bed, removed her pants and underwear, and while holding her down with his body weight, attempted to put “his private part” inside of her. J.S. kicked Jennings to get away, ran from the house, and called the police from her cell phone.
¶ 3. Lowndes County Sheriffs Deputy Mark McGarity responded to the call. While waiting for backup to arrive before questioning Jennings, Deputy McGarity saw Jennings exit the house and run into a utility room. Deputy McGarity followed. Jennings shoved Deputy McGarity and escaped to the backyard. Finally, Deputy McGarity caught Jennings and handcuffed him. On the drive to the sheriffs department, Jennings asked Deputy McGarity at least four times, “How much time am I going to get for this?”
¶ 4. Jennings first denied any inappropriate contact with J.S. After being read his Miranda[2] rights, Jennings allegedly asked the officers what an attorney was, and Detective Eli Perrigin responded, “It’s a lawyer.” Jennings did not ask any further questions. During the questioning, Jennings admitted to having sexual intercourse with J.S. Detective Perrigin wrote out a statement based on the information Jennings had relayed, and Jennings signed the statement.
¶ 5. After being taken to the hospital, sexual-assault-kit samples were gathered from J.S. At trial, the State called Dr. Bo Scales as a DNA expert. Dr. Scales, who had performed the DNA analysis, testified that male semen was found on the vaginal swab from J.S., but he could not detect a complete DNA profile due to the small amount of male DNA present on the swab. In the small sample taken from J.S., the sampling of Y-chromosome material had seven out of sixteen potential DNA markers. The seven markers that were found on the swab were also present in Jennings’s DNA profile, preventing him from being excluded as the source of the DNA taken from the rape-kit samples.
DISCUSSION
I. VOLUNTARINESS OF THE CONFESSION
¶ 6. Jennings contends the trial court erred by failing to grant his motion to suppress his confession. The question of the voluntariness of a confession is “essentially a fact-finding function.” Alexander v. State, 610 So.2d 320, 326 (Miss. 1992). If the trial court applied the correct legal standard, this Court “will not overturn a finding of fact made by a trial judge unless it [is] clearly erroneous.” Id. If the trial court makes its finding where conflicting evidence is presented, “this Court generally must affirm.” Id.
¶ 7. When a defendant places the voluntariness of his confession at issue, the burden rests with the State to prove beyond a reasonable doubt that the confession was given voluntarily. Carley v. State, 739 So.2d 1046, 1050 (¶ 16) (Miss.Ct. App.1999). This “burden is met and a prima facie case made out by [the] testimo *267 ny of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward.” Morgan v. State, 681 So.2d 82, 86-87 (Miss.1996) (citations omitted).
¶ 8. After transporting Jennings to the sheriffs department, Detective Perrigin provided Jennings with a printed copy of the Miranda waiver. Detective Perrigin read the waiver aloud, and Jennings followed along with his own printed copy of the waiver. Detective Perrigin asked Jennings if he understood the waiver; Jennings said he did and signed the form. Detective Perrigin testified that Jennings did not appear to be under the influence of drugs or alcohol, did not specifically ask for an attorney, and did not tell Detective Perrigin that he did not wish to give a statement. Detective Perrigin stated he did not make any promises or threats or attempt to coerce Jennings into signing the waiver.
¶ 9. Lieutenant Tony Perkins was also present during Jennings’s questioning. Lieutenant Perkins testified that Jennings appeared to understand what was being read to him. According to Lieutenant Perkins’s testimony, Jennings did not give any indication that he did not understand any portion of the waiver form as it was being read to him. Lieutenant Perkins also noted that he did not make any promises or threats to attempt to coerce Jennings to sign the waiver.
¶ 10. While being read the Miranda waiver and being advised he had a right to an attorney, Jennings asked, “What is an attorney?” Detective Perrigin answered, “It’s a lawyer.” Jennings did not ask any further questions, and Detective Perrigin instructed Jennings to “sign that right there.” Jennings now claims that this was an ambiguous request for legal representation, relying on Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In Edwards, the United States Supreme Court noted the need for “additional safeguards ... when the accused asks for counsel.” Id. at 484. In order to invoke the protections enunciated in Edwards, Jennings had to invoke his right to counsel — which he never did.
¶ 11. The State had the burden to prove that Jennings’s confession was voluntary. It offered testimony by Detective Perrigin and Lieutenant Perkins, who both stated that “the confession was voluntarily made without threats, coercion[,] or offer of reward.” The trial court heard testimony by both Detective Perrigin and Lieutenant Perkins and also heard the question Jennings asked during the reading of the waiver. Nothing in the record shows the trial court was clearly erroneous in its denial of Jennings’s motion to suppress. Therefore, this issue is without merit.
II. SUFFICIENCY OF THE EVIDENCE
¶ 12. Jennings claims the trial court erred when it denied his motion for a JNOV. A motion for JNOV “tests the legal sufficiency of the evidence supporting the verdict of guilty ... [and] asks the court to hold, as a matter of law, that the verdict may not stand.” Tait v. State, 669 So.2d 85, 88 (Miss.1996) (citing May v. State, 460 So.2d 778, 780-81 (Miss.1984)). Hence, in a criminal case, if the jury has returned a guilty verdict, this Court is “not at liberty to direct that the defendant be discharged[,] short of a conclusion on our part that [taking] the evidence ... in the light most favorable to the verdict, no reasonable [] hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.” Pharr v. State, 465 So.2d 294, 301 (Miss.1984).
*268 ¶ 13. Jennings was convicted of statutory rape under Mississippi Code Annotated section 97 — 3—65(l)(b) (Rev.2006), which states:
(1) The crime of statutory rape is committed when:
[[Image here]]
(b) A person of any age has sexual intercourse with a child who:
(i) Is under the age of fourteen (14) years;
(ii) Is twenty-four (24) or more months younger than the person; and
(iii) Is not the person’s spouse.
¶ 14. The evidence presented was sufficient to establish that Jennings and J.S. had sexual intercourse. Jennings confessed to the crime, and J.S. gave a detailed 'account of the rape. Besides J.S.’s testimony, physical evidence, including J.S.’s blood-stained underwear and jeans she had worn on the day of the rape, and the DNA evidence established that the intercourse had occurred. While not conclusive, the DNA evidence did not rule out Jennings as the perpetrator.
¶ 15. There was also sufficient evidence to satisfy the age requirements of the statute. J.S. was born on November 19, 1996, making her thirteen years old on June 9, 2010. Jennings was born on February 22, 1994, making him almost thirty-three months older than J.S. Finally, J.S. testified that she was not Jennings’s spouse.
¶ 16. Taking the evidence presented in the light most favorable to the State, a reasonable hypothetical juror could find beyond a reasonable doubt that Jennings was guilty of statutory rape. This issue is without merit.
III. WEIGHT OF THE EVIDENCE
¶ 17. Jennings alternatively argues that he is entitled to an acquittal or a new trial on the statutory-rape charge because the guilty verdict was contrary to the overwhelming weight of the evidence, specifically noting the lack of corroboration of J.S.’s testimony and the impeachment of J.S.
¶ 18. When reviewing a verdict when an objection has been raised to the weight of the evidence, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000). And all evidence “should be weighed in the light most favorable to the verdict.” Bush, 895 So.2d at 844 (¶ 18).
¶ 19. Jennings asserts that there was a lack of corroboration of J.S.’s testimony. From a reading of the record, it is clear that J.S. became confused while testifying. However, this confusion could be due to her young age and her mental capacity. In a bench conference, the trial judge stated he understood that J.S. was mentally handicapped. The State clarified, “She is very, very slow.” Although J.S.’s timeline of events may have been distorted, she clearly testified that Jennings lured her into his grandmother’s house, locked the door, took her to a bedroom, pushed her down onto the bed, removed her pants and underwear, held her down, and attempted to “put his private part inside [her].”
*269 ¶ 20. The jury heard additional evidence that corroborated J.S.’s testimony. The State presented the bloody underwear and pants J.S. had worn that day and testimony from the emergency-room nurse that J.S. was bleeding from her vagina when she arrived at the hospital. Also, Dr. Scales testified that he had tested the buccal swab taken from Jennings and the vaginal swab taken from J.S. and that seven out of sixteen DNA markers from the vaginal swab were also present in Jennings’s DNA profile. The jury also heard Jennings’s confession and his admission that he saw J.S. bleeding.
¶ 21. Viewing the evidence in the light most favorable to the verdict, it cannot be said that allowing the guilty verdict to stand would be “an unconscionable injustice.” This issue is without merit.
IV. REMOVAL TO YOUTH COURT
¶ 22. Jennings asserts the circuit court erred when it denied his motion to dismiss or to transfer his case to youth court.
¶ 23. In order for the youth court to have exclusive original jurisdiction, the proceeding must concern “a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child....” Miss.Code Ann. § 43-21-151(1) (Supp.2012). However, the circuit court has original jurisdiction in cases involving “[a]ny act attempted or committed by a child, which if committed by an adult would be punishable under state or federal law by life imprisonment or death_” Miss.Code Ann. § 43-21-151(1)(a).
¶ 24. Jennings, who was sixteen at the time of the crime, was charged with statutory rape under section 97-3-65(l)(b), which carries a possible sentence of “imprisonment for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years” for someone eighteen years of age or older. Miss.Code Ann. § 97-3-65(3)(c) (Supp.2012).
¶ 25. Under the sentencing requirements of section 97-3-65(3)(c), statutory rape under section 97-3-65(1)(b) carries a possible sentence of life imprisonment for an adult. Consequently, according to section 43-21-151, a case of statutory rape is under the original jurisdiction of the circuit court. The Mississippi Supreme Court has held “when a juvenile is charged with an offense carrying a potential life sentence, such as rape or murder, jurisdiction is vested exclusively in the circuit court[,] and the Youth Court Act is inapplicable.” Smith v. State, 534 So.2d 194, 195 (Miss.1988). This issue is without merit.
¶ 26. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, RESISTING ARREST, AND SENTENCE OF SIX MONTHS IN THE LOWNDES COUNTY JAIL AND TO PAY A $500 FINE; AND COUNT II, STATUTORY RAPE, AND SENTENCE OF FIFTEEN YEARS, WITH TEN YEARS TO SERVE, FIVE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $2,400 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY. CARLTON, J„ CONCURS IN PART AND IN THE RESULT. JAMES, J„ NOT PARTICIPATING.

. Initials of the victim are used to protect her identity.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).