607 So.2d 1159 (1992)
Kenneth BOWEN
v.
STATE of Mississippi.
No. 90-KA-0004.
Supreme Court of Mississippi.
August 26, 1992.
Jeffrey A. Varas, Hazlehurst, for appellant.
Michael C. Moore, Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and McRAE, JJ.
PITTMAN, Justice, for the Court:
Kenneth Bowen was convicted of sexual battery in the Circuit Court of Copiah County and sentenced to sixteen (16) years in the custody of the Mississippi Department of Corrections. Bowen filed a motion for JNOV and a motion for a new trial. Both motions were overruled. Bowen filed a notice of appeal and presented several *1160 assignments of error. Finding no reversible error, this Court affirms.

I.
On June 29, 1989, Kenneth Bowen was living with his sister, Christine Welch, and her husband, Tommy Welch. The Welches were provided with a trailer to live in by the Doe's in exchange for Christine Welch baby-sitting their two daughters, Susan, age 6, and Betty, age 3.
On the day in question, Christine Welch needed to return a water bed. Joyce Doe, age 18, and George Doe, age 14, John Doe's children from a previous marriage, were staying next door with their grandmother, Mary Johnson. Christine took the girls to Johnson's home and asked Joyce to give her a ride. She also asked Bowen, who was mowing Johnson's yard, to watch the girls while she was gone. She then took the girls back to the Doe home and Bowen and George came over to baby-sit. Kim Lewis, Christine's 15 year-old sister, was also at the Doe home that day.
Susan testified that while Christine was gone, Bowen told her to go into the bedroom where he took his pants off. He then took her panties off and "stuck his potty in [her] potty." According to Susan, Bowen told her not to tell anybody about what happened.
Dr. Julia Sherwood, an expert witness in the field of pediatrics, testified that she examined Susan Doe, who had been referred by Billy Mangold, a licensed social worker for the Department of Human Services. According to Dr. Sherwood, Susan "did not have a normal vaginal opening for her age, and that it was consistent with some type of manipulation. It certainly could have been consistent with penile manipulation, which means pressure."
Bowen testified that he did not molest Susan and that he was never left alone with the girls on June 29, 1989. According to Bowen, either George Doe or Kim Lewis was with him at all times during Christine's absence. The State, however, for impeachment purposes, cross-examined Bowen regarding a signed statement in which he admitted that he assaulted Susan Doe. On redirect examination, Bowen stated that he signed the statement because he was confused and did not know what else to do.
The jury found Bowen guilty of sexual battery, and he was sentenced to serve sixteen (16) years in the custody of the Department of Corrections of the State of Mississippi. Aggrieved by the guilty verdict, Bowen appeals his conviction to this Court.

II.
Bowen contends that the lower court erred in determining that Susan Doe was competent to testify and in denying his motion to have Susan evaluated by a competent psychologist. Susan was only six years old at the time of the trial. A voir dire examination was held before she was allowed to testify to determine if she was competent. The trial judge found that Susan was competent to testify pursuant to M.R.E. 601.
Bowen contends that the lower court abused its discretion in allowing Susan to testify because she did not understand her oath and she testified that she was told what to say. Bowen also points out that she did not know her birthday and that the date of the alleged assault did not mean anything to her.
When defense counsel asked Susan if she knew what telling the truth meant, she replied, "I don't know." Upon examination by the Court, however, Susan stated that she did know what telling the truth meant, and that she would get in "big trouble" if she did not tell the truth. Furthermore, when asked what the Assistant District Attorney told her to say, Susan replied, "Tell the truth."
The question of competency is one left to the sound discretion of the trial judge:
The determination whether a child is a competent witness is generally committed to the sound discretion of the trial judge. Before he allows a child of tender years to testify, the trial judge should satisfy himself that the child has the ability to perceive and remember *1161 events, to understand and answer questions intelligently, and to comprehend and accept the importance of truthfulness.
House v. State, 445 So.2d 815, 827 (Miss. 1984).
In Ivy v. State, 522 So.2d 740 (Miss. 1988), Jennifer Kinney, the five year old victim, testified that she knew the difference between telling the truth and lying. She did not know when her birthday was or the significance of the date of her injury. This Court affirmed the lower court's determination that Kinney was competent to testify:
Mississippi Rule of Evidence 601, like Federal Rule of Evidence 601, abolishes all grounds for disqualifying a witness, except for those listed in the Mississippi Rule. This is not to say that a trial judge may not still have power to keep a witness from testifying. The trial judge simply must shift his attention from the proposed witness to the proffered testimony and from competency to relevancy, looking to Mississippi Rules of Evidence 401 and 403.
Ivy, 522 So.2d at 742.
Susan testified that if she told a lie, she would get in "big trouble." As in Ivy, the fact that Susan did not know her birthday and did not know the significance of the date of her injury should not render her incompetent to testify. The lower court did not abuse its discretion in finding that she was a competent witness under M.R.E. 601.
Bowen also contends that the lower court erred in denying his motion to have Susan evaluated by a competent psychologist. He failed, however, to cite any case authority requiring Susan to submit to such an examination. Bowen maintains that the legislature provided for such examinations in Miss. Code Ann. § 13-1-409 (1986) which provides in pertinent part the following:
(1) If scientific, technical or other specialized knowledge will assist the trier of fact in understanding the testimony of a child under the age of twelve (12) in a case in which the occurrence or non-occurrence of physical or sexual abuse of a child is a material issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify, based on such expertise, in the form of an opinion or otherwise.
In Hall v. State, 539 So.2d 1338 (Miss. 1989), this Court ruled that the statute in question as part of the Evidence of Child Sexual Abuse Act was an unconstitutional usurpation of the rule-making powers of the Court by the legislature. As such, the statute does not provide any authority to support Bowen's argument. An argument unsupported by competent authority will not be considered on appeal. Kelly v. State, 463 So.2d 1070, 1072 (Miss. 1985); Smith v. State, 430 So.2d 406, 407 (Miss. 1983); Gandy v. State, 373 So.2d 1042, 1047-48 (Miss. 1979).
This assignment of error is without merit.

III.
Bowen also contends that the lower court erred in allowing the State to cross-examine him concerning an out of court signed statement. Bowen was arrested on July 14, 1989, and placed in the Copiah County Detention Center. Billy Mangold of the Department of Human Services questioned Bowen while he was being held. Mangold wrote down a statement and Bowen signed it without being informed of his Miranda rights. In the statement, Bowen admitted that he inserted his penis into Susan's vagina. The statement was turned over to the Sheriff's Department and the District Attorney's office.
Bowen filed a motion to suppress the statement. On November 21, 1989, a suppression hearing was held. The State was not allowed to introduce the statement due to Miranda violations.
On direct examination, Bowen denied that he was guilty. The State on cross-examination wanted to question Bowen regarding the signed statement. Outside the presence of the jury, Bowen was questioned as to the voluntariness of his statement.
*1162 It is well settled that a confession that is not voluntarily given cannot be used in the State's case-in-chief or for impeachment purposes. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A voluntary statement that is inadmissible due to some technical violation of Miranda, however, can be used for impeachment purposes if the defendant testifies to the contrary. Powell v. State, 483 So.2d 363 (Miss. 1986).
We start with two basic rules enunciated by this Court and the United States Supreme Court. The first is that a confession which in truth and in fact was not voluntary, which came about as a result of threats, physical mistreatment, or the promise of reward to make it, cannot be used at all, either in the state's case-in-chief or for impeachment purposes. We stated in Ladner v. State, 231 Miss. 445, 450, 95 So.2d 468 (1957):
... The reasons for excluding as evidence an involuntary confession apply with equal force when the confession is offered for purposes of impeachment. The confession is just as prejudicial and just as incompetent when offered in the one as in the other. The fact that the defendant takes the stand in his own behalf does not make incompetent evidence admissible against him. In principle the State should not be permitted to make any use whatever of an involuntary confession... .
On the other hand, the United States Supreme Court and this Court have held that a confession which in truth and in fact was freely and voluntarily given, but which was inadmissible as evidence on the state's case-in-chief because of a technical violation of the superstructure safeguards imposed by Miranda v. Arizona, 384 U.S. 436, 467-473, 86 S.Ct. 1602, 1624-1627, 16 L.Ed.2d 694 (1966), could be used for impeachment purposes if the accused testified to the contrary.
In Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the accused was given a defective Miranda warning, the officers inadvertently failing to tell him he was entitled to an attorney. There was no question, however, but that the confession was free and voluntary. The U.S. Supreme Court held the confession could be used for impeachment purposes.
In Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the accused was given a correct Miranda warning, and made a confession of guilt of theft of two bicycles, which was not in complete detail, however. He was placed under arrest, and as he was being transported to jail told the officer he would like to telephone a lawyer. The officer told him he could do so as soon as they got to the office. Then, as they passed an area the accused pointed out to the officer some brush where he had hidden a bicycle. The state trial court ruled the last statement inadmissible on the state's case-in-chief, but permitted introduction of the statement in rebuttal to contradict the defendant's trial testimony. The U.S. Supreme Court ruled this was proper.
In Booker v. State, 326 So.2d 791 (Miss. 1976), we adopted this rule where voluntariness in fact was not an issue, and also reaffirmed Ladner, supra, as to an involuntary confession.
Powell, 483 So.2d at 368-69 (emphasis original).
Bowen admitted that he was not threatened or mistreated when he made the statement. No one made any promises to him. He also was not intoxicated or under the influence of any drugs. Bowen also admitted that he could have stopped talking with Mangold at any time and that he could have left the room. When asked if the statement was voluntarily given and of his own free will, Bowen replied that he really did not know what to do and that he did not have a lawyer.
The trial judge found that, based on the evidence, the statement was voluntarily given and that the statement was inconsistent with Bowen's direct testimony. Even though the statement could not be introduced into evidence due to Miranda violations, the trial judge held that it could be used for impeachment purposes.
*1163 The defense argued that Bowen's statement could not have been voluntary because his IQ level was so low that someone could get him to say just about anything. Defense counsel requested that he be allowed to put on witnesses regarding Bowen's intelligence level. The Court refused to allow the defense to go into the matter at the voluntariness hearing. Bowen's mother, Jean Lewis, however, did testify as to his learning deficiency at the prior suppression hearing and on rebuttal before the jury.
In Lee v. State, 338 So.2d 399 (Miss. 1976), this Court was faced with a similar question. Lee had only a third grade education and could not read or write. In affirming the lower court's determination that Lee's confession was voluntarily given, this Court held:
The trial judge must determine the voluntariness of the confession from "the totality of the circumstances." See, e.g., Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 1140, 22 L.Ed.2d 433, 437 (1969). Where the defendant claims to have lacked the mental capacity to understand the warnings, the determination of the trial judge, who has seen the defendant on the stand, must necessarily be given great weight. A trial judge's finding that the defendant was mentally capable of understanding his rights has been upheld in the past. Harrison v. State, 285 So.2d 889 (Miss. 1973); Stewart v. State, 273 So.2d 167 (Miss. 1973). Here, Lee took the stand in his own behalf, and under cross-examination, seemed to understand his rights and appeared reasonably intelligent, though uneducated... . The appellant's testimony does not reveal any lack or impairment of understanding; therefore, his contention that he was incapable of understanding his Miranda rights when read to him is without merit.
Lee, 338 So.2d at 401 (emphasis added).
Although Bowen was placed in a slow learner's class, he only lacked one-half of a credit to graduate from the twelfth grade. Under Colorado v. Connelly, 479 U.S. 157, 163-67, 107 S.Ct. 515, 519-22, 93 L.Ed.2d 473, 481-84 (1986), there is no Constitutional requirement in making a determination whether a confession is free and voluntary to examine the mental capacity of the defendant; the focus is directed entirely to conduct on the part of the state. Also, Dunkins v. Thigpen, 854 F.2d 394, 399 (11th Cir.1988) cert. denied 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989); Winfrey v. Wyrick, 836 F.2d 406, 411 (8th Cir.1987); Penry v. Lynaugh, 832 F.2d 915, 918 (5th Cir.1987), reversed in part on other grounds, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Butler v. State, 608 So.2d 314 (Miss. 1992). Furthermore, the trial judge's determination must be given "great weight" since he was present during Bowen's testimony. Lee, 338 So.2d at 401. Bowen's signed statement, although inadmissible in the State's case-in-chief, was properly used to impeach his testimony.

IV.
The remaining issues raised by Bowen on appeal are devoid of merit and do not warrant discussion. Therefore, the lower court's decision is affirmed on these issues.
CONVICTION OF SEXUAL BATTERY AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.