757 So.2d 323 (2000)
Leroy BARNETT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01110-COA.
Court of Appeals of Mississippi.
March 28, 2000.
*326 Whitman D. Mounger, Greenwood, Attorney for Appellant.
Office of the Attorney General by John R. Henry Jr., Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Leroy Barnett was convicted of murder by a Leflore County Circuit Court jury in the stabbing death of Louise Whittaker. He was also convicted on a second count involving a charge of aggravated assault for allegedly stabbing Whittaker's four year old son, Kevis Whittaker, in the same incident. Though the child's injuries were severe enough to be life-threatening, he survived the attack. The most damaging evidence linking Barnett to these crimes was the testimony of the child, who positively identified Barnett as the assailant.
¶ 2. Barnett has appealed both convictions to this Court. He presents four issues which he contends require that his conviction be reversed. Those issues consist of (1) a claim that the trial court erred in seating certain jurors over the defendant's Batson objection; (2) a claim that the child's testimony at trial should have been excluded because he was incompetent to testify by virtue of his extremely young age; (3) a claim that the court improperly admitted damaging hearsay when several witnesses were allowed to testify that the child identified Barnett as the attacker on the morning after the incident; and (4) an attack on the quality of the State's evidence of guilt, alleging that the proof was insufficient to establish guilt as a matter of law or, alternatively, that the guilty verdicts were against the weight of the evidence.
¶ 3. Having concluded that none of the issues raised by Barnett warrant reversal of his convictions, we affirm.

I.

Facts
¶ 4. According to evidence presented by the State, Louise Whittaker was released from working the late shift at her employer at approximately 11:00 p.m. on the evening of August 29, 1996. After picking up her son, Kevis, from her grandmother's home, she returned to her own home. Sometime later in the night, Kevis was awakened by noises and observed Barnett appear to strike his mother repeatedly. According to Kevis, Barnett then dragged his mother from the house out to her car and put her body into the trunk. Barnett told Kevis that his mother was asleep. He placed Kevis in the car and the two drove around for a while and then returned to the home. Barnett took Kevis into the home and told him that his mother was going to sleep the rest of the night in the car. Kevis then stated that Barnett struck him twice in the back.
¶ 5. The child remained alone in the home the rest of the night until early the next morning, when his great grandmother called to check on them. The woman became alarmed when Kevis reported that his mother had slept in the car all night and she immediately came to the scene. She discovered that Kevis was bleeding and summoned police officers. The officers investigated and found Whittaker's body shut in the trunk of her vehicle. It was determined that she had died from multiple stab wounds. Medical treatment revealed that Kevis had suffered two stab wounds to the back, had significant internal bleeding, displayed symptoms consistent with a thirty percent to forty percent loss of blood, and was suffering from Class III shock.
¶ 6. The victim's grandmother was permitted to testify that, immediately upon arriving at the home and discovering Kevis's injuries, she inquired as to what had happened and the child had said words to the effect that "Leroy did this to me." The doctor who treated Kevis at the emergency *327 room was also permitted to testify that, in response to an inquiry from him, Kevis identified Barnett as the person who had assaulted him and his mother.

II.

The Batson Issue in Jury Selection
¶ 7. Barnett urges that reversible error occurred when the trial court permitted the State to exercise peremptory challenges to excuse four black jurors in the face of Barnett's assertion that the challenges were impermissibly based on racial considerations in violation of the prohibitions set out in Batson v. Kentucky, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Batson decision prohibited the exercise of peremptory challenges to remove jurors if (a) the reasons offered for exercising the such strikes were based on considerations related to race on their face, or (b) the reasons offered, though facially race-neutral, were seen by the trial court as being pretextual to disguise a hidden racially-based motivation to exclude the challenged members from the jury. Id. at 97-98, 106 S.Ct. 1712.
¶ 8. The Batson opinion outlined a skeletal procedure to test the validity of such peremptory challenges, which included a threshold requirement that the defendant make a prima facie showing of discriminatory use of peremptory challenges before the State could be required to articulate its reasoning. Id. at 93-94, 106 S.Ct. 1712. In this case, the defense, when first invoking Batson, noted that the State had used four challenges to remove four minority veniremembers from possible jury service. Though the trial court did not state on the record that this amounted to a prima facie showing of racial motivation, the State apparently conceded the point by voluntarily stating its motivating reason as to each challenged juror. The United States Supreme Court has held that, in such circumstances, the State's election to voluntarily articulate the reasons for its challenges renders the threshold question of demonstrating a prima facie case of discriminatory purpose moot. Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
¶ 9. The prosecutor stated that three of the four challenged jurors resided in or near an apartment complex that was notorious for drug use. The fourth juror was challenged, according to the State, because he was widely known to have severe mental or emotional problems. The trial court apparently had personal knowledge of both situations. The court confirmed the fact that the three potential jurors challenged because of where they lived did, indeed, live in an area noted for high illicit drug activity. It also assured defense counsel that the fourth juror's mental problems made him a very unsatisfactory juror, even from the defense's standpoint, and defense counsel appeared to accept that assertion at the time.
¶ 10. It has been adjudicated that evidence that a potential juror lives in a high crime area is a race-neutral basis to exclude that person from the jury through the exercise of a peremptory challenge. Gibson v. State, 731 So.2d 1087(¶ 26) (Miss. 1998). As to the remaining juror, we have little trouble accepting the proposition that a challenge due to a juror's suffering from known, and apparently fairly severe, mental or emotional difficulties is both race neutral on its face and a legitimate reason to exercise a peremptory challenge to exclude that person from jury service.
¶ 11. The sole question remaining to be decided is whether the reasons as offered, though race-neutral on their face, were actually designed to mask the State's true purpose of excluding minority members of the venire from serving on the jury. Thorson v. State, 721 So.2d 590(¶ 5) (Miss.1998). The trial court, by confirming of its own knowledge the circumstances surrounding the living arrangements of three of the venire members and the problematic nature of the fourth venire member's emotional or mental condition, *328 essentially accepted both the facial validity of the reasons as well as the sincerity of the prosecuting attorney in asserting those reasons as being the actual basis for the challenge. Thus, we find the trial court's remarks satisfy the requirement of Hatten v. State that the court make on-the-record findings regarding his resolution of the various aspects of a Batson challenge. Hatten v. State, 628 So.2d 294, 298 (Miss. 1993). We also find the court's resolution of the Batson issue to be within the range of the discretion afforded the court in such matters. Therefore, we decline to reverse his convictions on this issue.

III.

The Competency of Kevis Whittaker as a Witness
¶ 12. Barnett sought to bar the testimony of Kevis Whittaker based on an assertion that, because of his very tender years at the time of the incident, he was incompetent to testify. Barnett points out that the child was only four years old at the time of the incident and suggests that a child of such a tender age is incapable of accurately understanding and recalling events.
¶ 13. Any analysis challenging the competency of a witness begins with the assumption that every person is competent to give evidence, subject to certain exceptions based on considerations of policy unrelated to the capacity of the witness to comprehend and relate relevant information. M.R.E. 601. A party desiring to exclude the testimony of a witness based upon some cognitive deficiency must convince the trial court that the prospective witness lacks the fundamental capacity to testify helpfully because he is unable to perceive and remember events, is incapable of understanding and responding appropriately to questions concerning those events, or is not able to appreciate the importance of truthfulness in relating his version of the events. Bowen v. State, 607 So.2d 1159, 1160-61 (Miss.1992); House v. State, 445 So.2d 815, 827 (Miss.1984). Such considerations are submitted to the sound discretion of the trial court. Id. Though a literal reading of Rule 601 would suggest that there is no basis to exclude the testimony of a child, no matter its level of intellectual development, the Mississippi Supreme Court has made clear that the trial court may continue to exclude such evidence in its discretion by focusing on issues of relevancy under Rule 401 rather than the issue of competency. Ivy v. State, 522 So.2d 740, 742 (Miss.1988).
¶ 14. Rule 401 defines relevance as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Apparently, the supreme court in Ivy meant to convey the notion that, if the trial court determined that, because of the tender years of the proposed witness, the child could not be expected to accurately recall and relate events as they actually occurred or to understand the importance of reporting any such recollections truthfully, the court could exclude any such proposed testimony on the basis that it did nothing to prove or disprove a fact critical to the case.
¶ 15. Despite Ivy's apparent attempt to refocus the inquiry into the admissibility of a young child's testimony, it appears that the issues touching on the question of exclusion remain essentially the same as when "competency" itself was the issue. That Ivy did nothing to significantly alter the trial court's inquiry can best be seen in Bowen v. State, decided after Ivy. Bowen, 607 So.2d at 1161. In Bowen the supreme court quoted Ivy's suggestion that the trial court must look elsewhere than Rule 601 to determine whether to exclude the testimony of a small child. However, despite that starting premise in its analysis, the court reiterated the pre-Rule 601 standard to determine competency (ability to perceive and remember, to understand and intelligently respond to questioning, and to comprehend and appreciate the importance *329 of telling the truth), and concluded that "[t]he lower court did not abuse its discretion in finding that [the child] was a competent witness under M.R.E. 601." Bowen v. State, 607 So.2d 1159, 1161 (Miss. 1992) (emphasis supplied). Thus, we find nothing in Ivy or later decisions that would significantly alter the legal issues involved from those that have traditionally affected admissibility of a young child's proposed testimony.
¶ 16. In this case, the trial court examined Kevis outside the presence of the jury and listened to his proposed testimony as well as his responses to questions about his recall abilities and his understanding of the importance of telling the truth. After listening to this testimony first hand, including an observation of the demeanor of the child, the trial court determined that the child's testimony was at least trustworthy enough to permit the jury to hear it, thereby permitting the jury to make its own determination as to what weight and worth to afford the child's evidence. As we have previously noted, the matter of exclusion of a child witness based on these considerations is a matter committed to the sound discretion of the trial court. Id. at 1160. Without a showing as to how, in some demonstrable way, the trial court abused that discretion, there is no basis for this Court to interfere in that ruling. Id. at 1161. There was no such showing in this case and we, therefore, conclude this issue to be without merit.

IV.

The Admission of Hearsay Statements Allegedly Made by Kevis Whittaker
¶ 17. Barnett complains that Kevis Whittaker's great grandmother was permitted to relate a statement the child made upon her arrival at the home in the early morning hours after the incident in which the child's mother was killed and he was seriously injured. The trial court, after conducting an inquiry outside the jury's presence, concluded that the child's statements were admissible over a hearsay objection as being "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." M.R.E. 803(2). Barnett contends this ruling constituted an abuse of discretion since too much time had passed between the stabbings and the child's statement to qualify the remarks as an excited utterance. There is no hard and fast rule regarding the interval of time that passes between an event and an utterance before the remark necessarily must be classified as outside the excited utterance exception to the hearsay rule. Baine v. State, 606 So.2d 1076, 1079 (Miss.1992). That is a question to be resolved by the trial court in its sound discretion. Davis v. State, 611 So.2d 906, 914 (Miss.1992). The underlying reasoning behind this hearsay exception is that statements of this nature are deemed trustworthy, despite not being under oath, because the nature of the event has "suspend[ed] the declarant's powers of reflection and fabrication." KENNETH S. BROUN ET AL., McCORMICK ON EVIDENCE § 272 (John W. Strong ed., 4th ed.1992).
¶ 18. In this case, the circumstances were that, in the early morning hoursapproximately 1:00 a.m. according to the best evidence available in the recordthis four year old child was awakened to discover his mother being assaulted, observed his mother being dragged and placed in the trunk of an automobile, was himself stabbed in the back and abandoned alone at home where he remained until sometime before 7:00 a.m., when he was discovered by his great grandmother to be bleeding and in an apparent state of shock. His first statement in response to his great grandmother's inquiry was to relate that the defendant was the person who had committed these acts. To exclude that statement as not being an excited utterance would, in effect, require this Court to conclude that there was some *330 reasonable likelihood that the child took advantage of the several hours of the night while he remained alone, bleeding internally, and unsure exactly where his mother was, to devise a scheme to falsely name this defendant as the assailant. The trial court concluded otherwise and held that the statement, despite the passage of several hours between the event and the utterance, was made while the child was still under the influence of the event to the extent that his normal reflective powers and opportunity to fabricate some version different from the truth remained suspended. We cannot, under these circumstances, conclude that such a determination was so manifestly incorrect as to constitute an abuse of the trial court's discretion in controlling the flow of evidence. We, therefore, find this issue to be without merit. The mere fact that the statement, as in this case, was in response to an inquiry, though bearing on the question of spontaneity, does not necessarily take a responsive statement outside the realm of admissible excited utterances. Sanders v. State, 586 So.2d 792, 795 (Miss.1991).
¶ 19. Barnett also complains that the child's treating physician at the emergency room was permitted to testify that Kevis identified Barnett as his assailant. Barnett correctly points out that, though there is a hearsay exception for statements made for purposes of medical diagnosis, this exception does not normally permit a health provider to testify that a victim of violence identified a particular person as the assailant. Mitchell v. State, 539 So.2d 1366, 1370 (Miss.1989). The theory against such a practice is that, while the manner in which an injury was inflicted may be pertinent to diagnosis and treatment, the name of the assailant typically is not. Jones v. State, 606 So.2d 1051, 1056 (Miss.1992). There is a recognized exception to this rule, however, that permits evidence that a young sexual abuse victim has identified the molester to be admitted under the reasoning that the identity of the attacker is a part of a treatment program that would include isolating the child from the molester. Hennington v. State, 702 So.2d 403(¶ 48) (Miss. 1997); Mitchell, 539 So.2d at 1370. That exception was further extended by the Mississippi Supreme Court in 1999 to include similar statements by young victims of physical abuse not necessarily sexual in nature. Bailey v. State, 729 So.2d 1255(¶ 39) (Miss.1999). We conclude that the statement was admissible on this basis.
¶ 20. There is, additionally, an alternate theory that would permit the introduction of either of the earlier statements. Beginning with opening statement by defense counsel and continuing through the line of questioning of some of the State's witnesses, it is apparent from a review of this record that one of the primary aspects of Barnett's defense theory was that the child had been prompted by family members and investigating officers, either directly or by improperly suggestive questioning, to identify Barnett as the assailant. Such intimation that the child had been pressured or manipulated into "remembering" facts while on the stand that may not, in actuality, have existed amounts to a charge of recent fabrication. In that circumstance, proof of a prior consistent statement was not hearsay and was admissible to refute the implied claim that the child's story was concocted by police or the victim's family and planted in his mind after the actual event. M.R.E. 801(d)(1). We do not find reversible error in the trial court's decision to permit the child's great grandmother and the treating physician to testify concerning the child's statements identifying the defendant as his assailant.

V.

An Attack on the Weight and Sufficiency of the Evidence
¶ 21. Barnett filed a post-verdict motion seeking a JNOV or, alternatively, a new trial. The trial court denied him any relief.
*331 ¶ 22. The JNOV motion tested the sufficiency of the State's proof. It required the trial court to view all the evidence in the light most favorable to supporting the verdict. If, based upon such a review, the trial court determined that the State's proof as to one or more of the essential elements of the crime was so lacking that reasonable and fair-minded jurors could only find the defendant not guilty, the court's obligation was to set aside the jury's verdict and render a judgment of acquittal. McClain v. State, 625 So.2d 774, 778 (Miss.1993). If, on the other hand, the trial court determined that the State presented probative evidence tending to establish each of the essential elements of the crime, then the court's duty was to deny the motion. Parker v. State, 484 So.2d 1033, 1036 (Miss.1986).
¶ 23. On appeal of the denial of a JNOV motion, this Court must review the evidence in the same light as the trial court. We must reverse the conviction if we are convinced that, despite the conclusion of the trial court to the contrary, the State's proof was so deficient as to an essential element of the crime that reasonable jurors could only acquit. Jones v. State, 743 So.2d 415(¶ 16) (Miss.Ct.App. 1999).
¶ 24. Barnett's attack on the sufficiency of the evidence consists primarily of an assertion that the child's testimony carried so little probative value that the State simply failed, as a matter of law, to prove Barnett to be the assailant beyond a reasonable doubt. He also points to scientific evidence that fingernail scrapings from the murder victim were subjected to DNA testing that excluded him as the source of the material and that other DNA tests showed that the murder victim had a sexual encounter with a person other than the defendant shortly before her death.
¶ 25. It was the duty of the jury to assess the credibility of all the witnesses who appeared at trial and to determine what weight and worth to afford to their testimony. Harris v. State, 527 So.2d 647, 649 (Miss.1988). This rule applies with equal force to the testimony of Kevis Whittaker as it does to any other witness called to the stand. The child's testimony was not impeached. In fact, it was bolstered by previous similar statements made by the child (a) while still under the emotional distress triggered by the traumatic events surrounding this case and (b) shortly thereafter to a disinterested third party treating physician at a time before the child could not have been subjected to the mental manipulations suggested by the defense.
¶ 26. The scientific evidence indicating that the murder victim may have had a physical encounter of some sort with another individual in the time leading up to her death does not conclusively establish that Barnett was not the assailant of his two victims.
¶ 27. The testimony of one eyewitness is sufficient to sustain a criminal conviction. Williams v. State, 512 So.2d 666, 670 (Miss.1987). We find nothing in this record to suggest that Kevis Whittaker's testimony was so improbable or unworthy of belief as to have no probative value. He was quite explicit in identifying Barnett as the assailant and the jury, hearing his testimony and observing his demeanor first hand, chose to find him credible. We find no basis to exist for this Court to upset that determination.
¶ 28. An assertion that a verdict of guilty was against the weight of the evidence in effect concedes that, from a purely technical standpoint, the State may have introduced evidence having some probative value tending to establish all the essential elements of the charged crime, but that, nevertheless, the weight of the evidence so points to a contrary result that to permit the verdict to stand would work a manifest injustice. Johnson v. State, 642 So.2d 924, 928 (Miss.1994). In this case, there was conflicting evidence presented, some consistent with Barnett's guilt and some tending *332 to exonerate him. Our review of that evidence, viewed in the light most favorable to upholding the verdict, leaves us unconvinced that the evidence pointing toward Barnett's innocence weighed so heavily in favor of a judgment of acquittal that a retrial is necessary to avoid a substantial miscarriage of justice in this case. For that reason, we do not find that the trial court committed reversible error when it denied Barnett's motion for a new trial.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY OF CONVICTION OF COUNT I MURDER AND SENTENCE OF LIFE AND COUNT II AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.