BRIDGES, P.J.,
for the Court.
¶ 1. Edward Leon Wilks was indicted by grand jury charging him -with aggravated assault for cutting Kathy Renee Johnson Stewart with a box cutter. He was subsequently tried and convicted of said crime in the Circuit Court of Harrison County, First Judicial District, and, being an habitual offender, was sentenced to serve a term of life without parole in the custody of the Mississippi Department of Corrections. Aggrieved by the conviction, Wilks appeals to this Court claiming that the jury’s verdict is contrary to the overwhelming weight of the evidence.
FACTS
¶ 2. Stewart testified that on the evening of October 11, 2000, she was at Johnny Ray’s, a local club in Gulfport, Mississippi, when she came across Wilks, a former classmate of hers. After chatting, Wilks suggested walking to his apartment to smoke crack, and Stewart agreed. Once high, Wilks asked Stewart if she was going to do anything with him, to which she replied in the negative saying that she doesn’t “mess around like that with sex and drugs. There’s no money involved.” Stewart then got up to leave, and as she reached for the door handle, Wilks grabbed her from behind. A scuffle ensued, during which Wilks shouted obscenities at Stewart while struggling to keep one hand over her mouth and the other around her throat. Stewart, on the other hand, continuously screamed for help while also managing to bite Wilks’s finger and knock out Wilks’s bedroom window with her hand. Stewart’s friend, Marsha Floyd, finally responded to her cries for help by going to Wilks’s apartment. Floyd beat on the door for several minutes before Wilks responded. When Wilks let Floyd enter, Stewart tried taking advantage of the opportunity to escape, but as *1254 she exited, Wilks pushed her down. As Stewart lay face down, Wilks got on her back and then cut her on the side of her neck with a box cutter. Floyd tried pulling Wilks away, but he was able to grab Stewart again and cut her on the other side of her neck. Floyd continued struggling with Wilks and was finally able to restrain him so that Stewart could escape. Stewart ran to Martin’s Grocery, or “White Boy’s” store, and called the police. After arriving, the police called an ambulance that rushed Stewart to the emergency room for treatment. Each cut on Stewart’s neck required about ten stitches.
¶ 3. Floyd testified that she recognized the box cutter in question because, after Stewart ran away, Wilks handed it to her. Not knowing what to do with it, she explained that “[t]he window was broke, and so I just threw it back on the bed.”
¶ 4. Harold Dean Fair, Jr., an officer with the Gulfport Police Department, testified that he was the responding officer to Stewart’s phone call from Martin’s Grocery. He stated that Stewart had lacerations on her neck, so he called for an ambulance. Stewart then informed him as to what happened, so after she was taken away, he went to Wilks’s apartment. Officer Fair explained that he “found the window had been broken out at the apartment, and [he] could observe through the window a gray in color metal box cutter laying on the bed inside of the apartment, and that there was some traces of blood outside of the apartment” and that he “retrieved the box cutter by reaching ... through the window.” Officer Fair later returned to the north Gulfport substation to complete his paperwork when he was informed by dispatch that Wilks was at the hospital seeking treatment. Officer Fair then went to the hospital where he learned that Wilks was being treated for a bite wound to his little finger. After advising Wilks of his rights, Officer Fair questioned him, and Wilks explained that he and Stewart went to his apartment, smoked crack, and then engaged in sexual activity. Wilks continued stating that, afterwards, Stewart went crazy, broke the window with a stick, and then ran away. When asked about the lacerations on her neck, Wilks stated that Stewart did it to herself. After Wilks received treatment, Officer Fair arrested him.
¶ 5. Detective Charles Bodie, a crime scene investigator with the Gulfport Police Department testified that the box cutter in question tested positive for the presence of blood. However, Bodie did admit that he did not perform a DNA test to determine whose blood was on the box cutter, nor did he test whether the blood was that of a human.
LAW AND ANALYSIS
¶ 6. Following his conviction, Wilks filed a motion for a new trial. After a hearing, the motion was denied, and it is the denial of this motion that Wilks ostensibly contends to be the sole issue on appeal. In his brief to this Court, though, Wilks maintains that the State failed (a) to prove every element of the crime for which he was indicted and (b) to present any evidence, other than the testimony of Stewart, that proves his guilt beyond a reasonable doubt. Wilks’s argument, therefore, advances two distinct legal issues, so to be abundantly cautious, we will address each of them.
A.
Sufficiency of the Evidence
¶ 7. Wilks’s contention that the State failed to prove beyond a reasonable doubt every element of the crime for which he was indicted implicates the legal sufficiency of the evidence presented at trial. *1255 Therefore, by virtue of challenging the legal sufficiency of the evidence, Wilks, in essence, claims that the State’s proof, as to one or more of the essential elements of aggravated assault, is so lacking that a fair-minded juror reasonably assessing the evidence could only find him not guilty. Garner v. State, 856 So.2d 729, 734(¶ 18) (Miss.Ct.App.2003). Appellate review of this issue, however, must be predicated upon a proper post-trial motion by the defendant, ie., a motion for judgment notwithstanding the verdict. Id.
¶ 8. Wilks never declared that he was appealing a JNOV motion. Furthermore, our review of the record reveals that Wilks never filed such motion, as permitted by Rule 50(b) of the Mississippi Rules of Civil Procedure. Consequently, we are procedurally barred from considering this issue, for we may not hold the lower court in error on an issue never brought before it. See Read v. State, 430 So.2d 832, 838 (Miss.1983).
B.
Weight of the Evidence
¶ 9. Wilks maintains that the lower court erred in denying his motion for a new trial claiming the jury’s verdict was contrary to the overwhelming weight of the credible evidence presented at trial. Wilks contends the State failed to present evidence proving beyond a reasonable doubt that he inflicted the wounds on Stewart’s neck. He claims his conviction cannot be predicated solely upon Stewart’s testimony because that alone creates nothing more than a possibility or, at the most, probability that he acted in conformity therewith and that the subsequent circumstantial evidence presented by the State was equally insufficient because it failed to exclude every reasonable hypothesis of innocence. Wilks also attacks the veracity of Stewart’s testimony noting several occasions on which their testimony conflicts.
¶ 10. Appellate courts must accept as true the evidence which supports the verdict when determining whether a jury verdict is against the overwhelming weight of the evidence and may reverse only when convinced that the lower court’s failure to grant a new trial constitutes an abuse of discretion. Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998). Accordingly, appellate courts may only disturb the verdict of the jury in such cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Id.
 ¶ 11. We find that Wilks’s argument is without merit. The jury, sitting as finders of fact, is vested with the sound discretion regarding questions of credibility as to any witness, including the victim, as well as what weight or worth to assign to any witness’s testimony. Barnett v. State, 757 So.2d 323, 331(¶ 25) (Miss.Ct.App.2000). Furthermore, if the jury finds the testimony worthy of belief, the uncorroborated testimony of the victim of a crime alone is sufficient evidence to sustain a conviction. Id. at (¶ 27). The State presented evidence satisfying each essential element of the crime charged, and Stewart’s testimony that Wilks cut her neck with the box cutter was unequivocal. We additionally note, from our review of the jury’s verdict, the absence of any indication that the jury abandoned its duty by basing its determination of guilt on some alternate, and impermissible, basis such as bias, passion or prejudice against Wilks. Wal-Mart Stores, Inc. v. Johnson, 807 So.2d 382, 389(¶ 16) (Miss.2001). Accordingly, we find that the jury’s verdict was not contrary to the overwhelming weight of the evidence; therefore, the lower *1256 court’s denial of Wilks’s motion for a new trial was not an abuse of discretion.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCED AS AN HABITUAL OFFENDER TO SERVE LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR.