GRIFFIS, P.J.,
for the Court:
¶ 1. John T. Graham appeals his conviction of sexual battery of a victim under the age of fourteen, in violation of Mississippi Code Annotated section 97 — 3—95(l)(d) (Supp.2012). Graham asserts two errors. First, he argues that the prosecutor’s arguments were improper and amounted to misconduct. Second, Graham argues that the trial court erred by failing to make a finding as to the competency of the four-year-old witness and that the witness should not have been allowed to testify while she sat with her father. We find no error and affirm.
FACTS[1]
¶ 2. On May 26, 2010, Graham was seventeen years old. Graham’s older sister, *1040 Cynthia Graham, regularly babysits the children of Daniel Doe.[2] Graham was often present when the Doe children were in Cynthia’s care.
¶ 3. On May 26, 2010, Daniel picked up his four-year-old daughter, Jane, from his mother’s house. Jane appeared upset. Daniel asked her what was wrong. Daniel testified that Jane responded that “Johnny T. touched her pee-pee.” Daniel did not know anyone called “Johnny T.” Daniel’s mother told him that “Johnny T.” was “[a] guy at the baby-sitter’s, I guess related to Cynthia Graham, who was the baby-sitter.” Daniel also testified that Jane told him that Johnny T. had “dug into her pee-pee.”
¶ 4. Daniel called Jane’s mother, who then took Jane for a medical examination. Dr. Lashunte Jones, the examining physician, testified that the medical exam did not reveal any physical evidence of sexual battery. Dr. Jones did not perform invasive testing, because Jane had been to a water park immediately after the incident. Dr. Jones testified that Jane said “touch,” not “dug.” Dr. Jones specifically testified that she did not remember Jane using the word “dug.”
¶ 5. Jane testified while sitting on Daniel’s lap. Jane testified that she knew her private parts were her “wee-wee and butt.” She testified that her babysitter was “Miss Cynthia” and that “Johnny T.” touched her private parts “inside” with his finger. When asked if “Johnny T.” was in the courtroom, the record indicated that Jane pointed, but the record does not indicate where she pointed or that she identified Graham. Jane testified that she only told her mother and father.
¶ 6. On cross-examination, Jane testified that “he” dug his finger inside of her and it hurt. She was confused by questions regarding whom she told afterwards. In fact, she claimed she never stayed with her grandmother, even though her grandmother picked her up from daycare. She agreed she had gone to the water park with “J.T.” and others.
1Í 7. The ease was investigated by Stacy Rollison and Todd Dykes. Rollison went to the hospital where Jane was being examined. She took a recorded statement from Jane, which was played for the jury.
¶ 8. Dykes interviewed Graham, and a recording of the interview was played for the jury. In this interview, Graham stated, “I’m going to tell them that I touched her when I was playing with her like I did all the rest of the kids.” Graham denied any contact with Jane but later conceded that there may have been accidental touching.
¶ 9. Cynthia testified for the defense. On May 26, 2010, Cynthia left her brother with the Doe children so that she could pick up a child getting out of school. Cynthia was gone for forty-five minutes. Jane was awake when Cynthia returned. Cynthia took a picture of the Doe children sitting on her couch. Jane had her hands in her lap for the picture, which was usual for her. The pictures were admitted into evidence.
¶ 10. Cynthia then took the children to a water park. She testified that Jane appeared normal and played with the other children at the water park. Jane rode *1041 with Graham from the water park. Afterward, her paternal grandmother picked her up.
¶ 11. Amy Doe[3] also testified for the defense. Amy was in a relationship with Cynthia and was at the water park that day. Amy testified that Jane appeared excited and not "withdrawn. Amy further stated that Jane was a truthful person.
¶ 12. Abby Graham, Graham’s mother, was also at the water park. She testified that Jane appeared happy and wanted Graham to play with her and the other children. According to her, Jane wanted to ride back with Graham. Likewise, Leslie Duncan, Graham’s brother, testified that he was at the water park and saw Jane running, laughing, and playing.
¶ 13. Graham testified. Graham had completed ninth grade and was working on his GED. He would go to his sister’s home every now and then to help with the kids, but he had never been accused of anything like this. Graham testified that he was alone with the Doe children that day for about forty-five minutes. He said that, during that time, he did not put his finger inside of Jane. He showed the jury his reportedly large hand. He also testified that he played with the children all the time. Graham agreed that his hand could have slipped under Jane’s underwear, while he was playing and throwing her into the air. Graham’s final words to the jury were that he did not touch Jane, nor gratify any lustful urge with her.
¶ 14. The jury was instructed and closing arguments were made. The jury returned a verdict of guilty. The circuit judge sentenced Graham to a term of twenty-five years, with seven years suspended, in the custody of the Mississippi Department of Corrections. Graham was also sentenced to five years of post-release supervision and was required to register as a sex offender. It is from this judgment that Graham now appeals.
ANALYSIS

1. Whether the multiple instances of improper argument constituted prosecutorial misconduct, requiring reversal.

¶ 15. In the first issue, Graham claims error in the prosecutor’s arguments during opening statements and closing arguments. Graham argues that where the “natural and probable effect of the prosecutor’s improper statements was the creation in the minds of the jurors of an extra-legal burden of accountability to the State prejudicial to the rights of the accused,” the reviewing court must reverse the conviction and judgment of the trial court. Sheppard v. State, 777 So.2d 659, 662 (¶ 10) (Miss.2001).
¶ 16. Graham’s argument begins with the prosecutor’s opening statement. Graham claims that the prosecutor improperly argued that Graham, by exercising his right to trial, had forced a four-year-old to come to court and take the stand. The prosecutor stated, “Unfortunately, [Jane] is going to have to take the witness stand.”
¶ 17. Graham claims that in closing arguments, the prosecutor made the following improper arguments:
So what do we know about four-year-olds? Generally, they are brutally honest ... [Tjhey’re usually pretty honest when asked questions.
[[Image here]]
And another thing that stuck out in this trial that I think has been — it has not been disputed. One of defense counsel’s *1042 own witnesses, when asked, “Is [Jane] an honest child? Is [Jane] a truthful child?” What did that witness say? Yes, [Jane] is a truthful child. Nothing has been brought forward to you to make you think [Jane] is anything but truthful.
[[Image here]]
To me, her statement is enough.... But in this case [Jane’s] statement is enough for me.
[[Image here]]
I submit to you [Jane] has probably been the most credible witness I’ve seen this week.
[[Image here]]
If you don’t believe [Jane,] then go home and tell your children, if somebody touches you, don’t even bother to tell me.
¶ 18. Graham’s trial counsel only objected to the last statement. The trial court sustained the objection. As a result, any error as to the last statement was cured at this point. “When a trial court sustains an objectionf,] it cures any error.” Holland v. State, 705 So.2d 307, 335 (¶ 91) (Miss.1997). Further, Graham’s counsel did not ask for any type of limiting instruction.
¶ 19. As to the other arguments by the prosecutor, Graham’s counsel did not make an objection. We must recognize that attorneys are allowed wide latitude in arguing cases to the jury. “However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.” Sheppard, 777 So.2d at 661 (¶ 7) (citing Hiter v. State, 660 So.2d 961, 966 (Miss.1995)). “The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.” Sheppard, 777 So.2d at 661 (¶ 9) (citing Ormond v. State, 599 So.2d 951, 961 (Miss.1992)).
¶20. “A contemporaneous objection must be made ... for this Court to consider claims of improper or erroneous comments” by a prosecutor during arguments, or the objection is waived. Hampton v. State, 815 So.2d 429, 432 (¶ 11) (Miss.Ct.App.2002) (citing Lanier v. State, 533 So.2d 473, 478 (Miss.1988)). Although, “if a comment is so inflammatory that the trial court should have objected on [its] own motion, the point may be considered.” Id. Following this standard, we do not find that the prosecutor’s statements require us to reverse the conviction. Indeed, we find no merit to this assignment of error.
£ Whether the trial court erred in its determination of the competency of a four-year-old witness where no showing was made of the child’s understanding of the importance of telling the truth and where the witness was allowed to sit with her father during her testimony.
¶ 21. In the second issue, Graham challenges Jane’s competency to testify. However, Graham recognizes that Jane’s age does not disqualify her as a competent witness. With certain exceptions, Mississippi Rule of Evidence 601 provides that “[e]very person is competent to be a wit-ness_” Graham argues that the testimony of a four-year-old witness must demonstrate the specified minimum standards of competency before the testimony is received against a defendant accused of a felony.
¶ 22. While the trial court is not obligated to conduct a separate voir dire of a young witness, Graham contends that it is *1043 incumbent upon the State to preliminarily demonstrate competency. See Burbank v. State, 800 So.2d 540, 544 (¶ 6) (Miss.Ct.App.2001). This should be done by “a detailed series of questions aimed at determining [the child’s] ability to comprehend the nature of providing truthful testimony...." Davis v. State, 760 So.2d 55, 58 (¶ 11) (Miss.Ct.App.2000). The trial court then should make its determination of competency. Not only is an understanding of the importance of telling the truth indispensable to a showing of the competency of a young child, but the child must also appreciate the seriousness of the criminal charge and of the legal proceedings. See Edmond v. State, 35 So.3d 536, 539 (¶ 13) (Miss.Ct.App.2009).
¶23. Graham claims that nothing in the questioning of Jane by the State provided any basis to form an opinion concerning the young child’s competency. At the time her testimony was given and the court made its determination, the court was without sufficient information to determine competency. “In order to prevail in its effort to exclude the testimony of a child witness, the party opposing the testimony must show that at the time the court made its initial decision that it was apparent that the witness did not meet the criteria for testifying....” Williams v. State, 859 So.2d 1046, 1049 (¶ 14) (Miss.Ct.App.2003).
¶ 24. Graham also recognizes that no objection was made as to the competency of Jane. Nevertheless, Graham argues that the lack of an objection should not relieve the trial court of its duty, “[bjefore allowing the child to testify, ... [to] determine ‘that the child has the ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness.’ ” Mohr v. State, 584 So.2d 426, 431 (Miss.1991). Graham claims that the ultimate onus, then, is on the trial court.
¶25. Graham asserts that the only question by the prosecutor to establish Jane’s competency was: “Do you understand what a lie is, [Jane]?” Jane did not offer a verbal response, but the record reflects that she nodded her head. Graham claims that this was not a sufficient showing.
¶26. Graham also argues that it was error for Jane to testify while sitting in her father’s lap. Graham argues that any witness’s testimony should be her own, and not influenced, directly or indirectly, by any outside source. To support this claim, Graham argues the legal principle that “all testimony must be that of the witness, and not that of counsel.” Moffett v. State, 540 So.2d 1313, 1318 (Miss.1989). Interestingly, Graham’s brief argues that “[t]he trial court lacked sufficient basis for allowing the testimony of the young witness in this matter and should not have permitted her testimony, sua sponte.”
¶ 27. “Any analysis challenging the competency of a witness begins with the assumption that every person is competent to give evidence, subject to certain exceptions based on considerations of policy unrelated to the capacity of the witness to comprehend and relate relevant information.” Woulard v. State, 832 So.2d 561, 564 (¶ 8) (Miss.Ct.App.2002) (citing Barnett v. State, 757 So.2d 323, 328 (¶ 13) (Miss.Ct.App.2000)). As this Court noted in Burbank, 800 So.2d at 544 (¶ 6), “[although the court did not conduct a preliminary [interrogation] of the child to determine competency, it was not required to do so.” The determination of competency is left to the discretion of the trial court. Id. (citing Barnett, 757 So.2d at 329 (¶ 16)). Here, Graham has shown no abuse of that discretion in the trial court’s ruling. *1044 Therefore, we find no merit to this assignment of error.
¶ 28. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH EIGHTEEN YEARS TO SERVE AND SEVEN YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $5,000 FINE, AND TO REGISTER AS A SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT.

. The statement of the facts provided by the Attorney General is as follows:
Defendant stuck his finger “inside” a four-year-old girl[’]s “wee-wee.” Tr. 94. The jury year [sic] the testimony of the four-year-old and defendant testified on his own behalf. Also the jury heard the interviews of defendant with the police. The jury returned a verdict of guilty beyond a reasonable doubt.
We urge the Attorney General to review Rules 28(a)(4) and (c) of the Mississippi Rules of Appellate Procedure and comply with these requirements in future cases on appeal. This Court expects the Attorney General’s brief to state that it is either satisfied with the appel *1040 lant's statement of facts or to provide a "statement of facts relevant to the issues presented for review, with appropriate references to the record.” Id. The statement offered by the Attorney General fails to meet the requirements of Rule 28.

. To protect the identity of a victim of sexual abuse, we use fictitious names to identify the victim and her family members in this opinion.

. Amy was Daniel’s sister and Jane’s aunt.